THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUIZ FAJARDO INGENIEROS ASOCIADOS S.A.S., a foreign corporation,<br><br>Plaintiff,<br><br>v.<br><br>FLOW INTERNATIONAL CORPORATION, a Delaware corporation,<br><br>Defendant. | No. 2:16-cv-01902-RAJ<br><br>**DEFENDANT FLOW INTERNATIONAL CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br>**November 16, 2018** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................ 1

II. BACKGROUND ........................................................................................................................ 2

III. ARGUMENT ............................................................................................................................. 5

    A.    Summary Judgment Standard ..................................................................................... 5

    B.    Ruiz Fajardo Claim for Consequential Damages is Contractually Barred................... 5

    C.    Ruiz Fajardo is Limited to Claiming Breach of the Express Warranty Contained in the Sales Contract. ......................................................................................................... 10

    D.    The Sales Contract's Warranty Extended Only One Year Until May 3, 2014........... 12

    E.    Ruiz Fajardo Did Not Reject Acceptance of the System. .......................................... 12

IV. CONCLUSION................................................................................................……………15

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - i
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

**TABLE OF AUTHORITIES**

Page(s)

Cases

*ADT Sec. Servs., Inc. v. Envision Telephony, Inc.*,
  No. 07-CV-01234-LTB-CBS, 2008 WL 5064268 (D. Colo. Nov. 21, 2008) .................. 7, 8, 9, 10

*Allis-Chalmers Corp. v. Sygitowicz*,
  18 Wn. App. 658 (1977) ............................................................................................................. 13

*Am. Nursery Prod., Inc. v. Indian Wells Orchards*,
  115 Wn.2d 217, 797 P.2d 477 (1990) ...................................................................................... 6, 9

*Celotex Corp v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................................... 5

*Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*,
  635 F.2d 1081 (3d Cir. 1980) ........................................................................................................ 8

*Elizabeth Retail Properties, LLC v. KeyBank Nat'l Ass'n*,
  No. 3:13-CV-02045-SB, 2017 WL 1407662 (D. Or. Mar. 10, 2017) ......................................... 11

*Hays Merchandise, Inc. v. Dewey*,
  78 Wn.2d 343 (1970) ............................................................................................................ 13, 15

*Jenson v. Richens*,
  74 Wn. 2d 41, 442 P.2d 636 (1968) .............................................................................................. 9

*Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*,
  709 F.2d 427 (6th Cir. 1983) ............................................................................................. 7, 8, 10

*McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.*,
  63 F.3d 1188 (2d Cir. 1995) .......................................................................................................... 8

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
  902 F.2d 703 (9th Cir. 1990) ......................................................................................................... 9

*Nw. Airlines v. Hughes Air Corp.*,
  37 Wn. App. 344, 679 P.2d 968 (1984) ........................................................................................ 9

*Peter Pan Seafoods, Inc. v. Olympic Foundry, Co.*,
  17 Wn. App. 761 (1977) ........................................................................................................ 13, 14

*Pierce v. Catalina Yachts, Inc.*,
  2 P.3d 618 (Alaska 2000) .............................................................................................................. 8

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - ii
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

*Razor v. Hyundai Motor Am.*,
  222 Ill. 2d 75, 854 N.E.2d 607 (2006) ........................................................................................10

*Riegel Power Corp. v. Voith Hydro*,
  888 F.2d 1043 (4th Cir. 1989) ...................................................................................................... 8

*Stations W., LLC v. Pinnacle Bank of OR*,
  338 F. App'x 658 (9th Cir. 2009) .........................................................................................11, 12

*World Wide Lease, Inc. v. Grobschmit*,
  21 Wn. App. 537, 586 P.2d 889 (1978).....................................................................................14

**Statutes**

RCW 62A.1-203 .............................................................................................................................14

RCW 62A.2-719 ............................................................................................................... 6, 7, 9, 10

**Other Authorities**

Federal Rule of Civil Procedure 56..............................................................................................1, 5

Federal Rule of Civil Procedure 30(b)(6).......................................................................................10

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - iii
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

## I.   INTRODUCTION

Defendant Flow International Corporation ("Flow") respectfully moves pursuant to Fed. R. Civ. P. 56 for an order dismissing specific portions of Plaintiff Ruiz Fajardo Ingenieros Asociados S.A.S.'s ("Ruiz Fajardo") claims in this matter. Discovery in this case has now concluded, and although there remain factual issues which are not appropriate for summary judgment, several legal issues, which do not turn on disputed facts, are ripe to be decided. Specifically, Flow brings the instant motion on the following issues:[1]

First, Flow moves for an order finding that the consequential damages limitation contained in the sales contract through which Ruiz Fajardo purchased the at-issue waterjet cutting machine is enforceable. Ruiz Fajardo asserts that if the separate provision in the contract limiting its remedies to repair and replacement fails of its essential purpose,[2] the provision limiting consequential damages should also fail. This argument is legally flawed and ignores the case law finding that, under Washington law, a consequential damages limitations remains in effect regardless of whether a remedy provision fails of its essential purpose.

Second, Flow requests an order that the only warranty on which Ruiz Fajardo may bring its breach of warranty claim is the single express warranty contained in the sales contract. Ruiz Fajardo's complaint references no other warranty and during discovery, Ruiz Fajardo's corporate representative testified that the contract's warranty was the sole warranty on which the company is basing its warranty claim. Accordingly, Flow seeks an order that Ruiz Fajardo may not now, after discovery is closed, change its theory of liability and assert it is basing its claim on some unannounced express or implied warranties.

---

[1] Pursuant to the Court's rules regarding motions practice, Flow's counsel has met and conferred with Ruiz Fajardo's counsel regarding each of the specific issues on which Flow now moves. Declaration of Andrew Escobar in Support of Defendant Flow International Corporation's Motion for Partial Summary Judgment ("Escobar Decl."), ¶ 9. Regrettably, the parties were not able to reach a resolution on any of the issues. *Id.*

[2] Flow maintains that the limited remedy contained in the contract did not fail of its essential purpose, but does not seek a ruling on the issue through the current motion.

| DEFENDANT FLOW INTERNATIONAL | DLA Piper LLP (US) |
| --- | --- |
| CORPORATION'S MOTION FOR PARTIAL | 701 Fifth Avenue, Suite 6900 |
| SUMMARY JUDGMENT - 1 | Seattle, WA  98104-7029 \| Tel: 206.839.4800 |
| No: 2:16-cv-01902-RAJ | |

Third, Flow moves for an order holding that the warranty contained in the sales contract extended one year until May 2014.  The contract's plain language states that a one-year warranty applies unless Ruiz Fajardo sent one of its representatives to a 4-day system maintenance training course within three-months of the machine being installed.  No Ruiz Fajardo representative ever attended such a training, meaning the warranty by its terms was limited to one year.

Fourth and finally, Flow requests the Court find that Ruiz Fajardo has not revoked its acceptance of the machine.  Ruiz Fajardo has never indicated that it wishes to return the machine, accordingly, based on the undisputed facts, Ruiz Fajardo cannot claim revocation has occurred.  Even if Ruiz Fajardo's complaint is construed as a sufficient request for revocation—which it is not—such a request is untimely and invalid given Ruiz Fajardo's subsequent actions, which demonstrate its continued dominion over the machine.

## II.     BACKGROUND

The facts on which this motion rely are not in dispute.  Flow, which is based in Washington, manufactures and sells industrial waterjet cutting machines.  Plaintiff Ruiz Fajardo is a Colombian engineering firm that uses "advanced technologies to provide metalworking services including prefabrication, installation, and consulting."  Dkt. No. 1 at ¶ 8.  In November 2012, the parties entered into a contract for the purchase of a Mach 4030c waterjet cutting machine (the "System").  Escobar Decl., Ex. A (Contract) at 1, 3.  Specifically, on November 5, 2012, following communications between the parties, Tulio Ruiz, Ruiz Fajardo's principal and legal advisor traveled to Kent, Washington and executed a sales contract for purchase of the System for $437,830.00.  *Id.*, Ex. A, Ex. B (Ruiz Dep.) at 40:22–41:23.  In January 2013, after Ruiz Fajardo agreed to purchase the System, but before payment was made, Flow sent the complete sales contract to Ruiz Fajardo along with an invoice for the cost of the System.  *Id.* at 65:15–66:22.  After having the sales contract translated and reviewing its terms, Ruiz Fajardo agreed to make the payment for the System.  *Id.* at 63:5–64:12, 66:7–23.

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

The sales contract contains three separate provisions applicable here. First, in paragraph 1(a) in the Terms and Conditions, the contract contains a clause limiting the remedies Ruiz Fajardo may pursue, which states:

> Flow warrants the Equipment to be free from defects in workmanship and materials for the period specified on the quotation, except that spare parts shall be warranted for a one-year period…. Flow's liability is limited to repair or replacement of the Equipment and the determination regarding which of these is appropriate shall be at Flow's sole discretion.

Escobar Decl., Ex. A (Contract) at 22. Second, in paragraph 2, the contract contains a clause conspicuously disclaiming warranties other than the one expressly contained in paragraph 1(a):

> **2. LIMITATION OF WARRANTIES**
> EXCEPT AS PROVIDED IN SECTION 1 ABOVE, FLOW MAKES NO OTHER WARRANTIES TO BUYER, EXPRESS OF IMPLIED, AND HEREBY EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

*Id.* at 22 (emphasis in original). Third, on a separate page in paragraph 9, the contract limits the damages available to Ruiz Fajardo:

> **9. LIMITATION OF DAMAGES**
> FLOW SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OF USE, LOSS OF PRODUCTION, DAMAGES TO OTHER EQUIPMENT, COST OF CAPITAL OR INTEREST.

*Id.* at 23 (emphasis in original).

Regarding the duration of the limited warranty agreed to in paragraph one of the Terms and Conditions, the contract states on page 19 that the "warranty term is two (2) years from the system shipment or 4000 hours, whichever comes first." Escobar Decl., Ex. A at 19. However, in the following paragraph, the contract makes plain that "[i]n order to qualify for this warranty period, at least one person within the customer's organization assigned to maintain the equipment must attend a free system maintenance training course prior to or within three (3) months of system installation. If training is not elected, a one (1) year warranty will apply." *Id*. The contract explains this system maintenance training course, stating "Flow will provide …. [f]our (4) days of system training for up

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

to two people in Jeffersonville, Indiana (Louisville) or Kent, Washington (Seattle).  The training will include operation and programming training on the X-Y machine and maintenance training for the high-pressure system.…  Flow recommends that training occur prior to installation as it will be required for operating the system." *Id.* at 15.[3]

After reviewing these terms, Ruiz Fajardo paid for the Machine, which was shipped in early May 2013.  Escobar Decl., Ex A. at 1.  The System was installed by Flow technicians at Ruiz Fajardo's facility outside Bogota, Colombia in fall 2013.  *Id.*, Ex. F.

Despite Flow's recommendations, Ruiz Fajardo never sent a representative to attend the 4-day system maintenance training course at one of Flow's facilities.  Escobar Decl., Ex. B (Ruiz Dep.) at 96:21–24.

The parties dispute how the System has functioned since it was installed, the cause of the alleged malfunctions, and the adequacy of the repairs Flow offered.  The Court need not resolve these disputed issues to decide the current motion.  Relevant here are only the following undisputed facts: Ruiz Fajardo claims it has experienced problems with the System since it was first installed, but continued to operate the System until early 2016, when Ruiz Fajardo asserts the System stopped working.  Escobar Decl., Ex. B (Ruiz Dep.) at 22:11–23; Ex. C (Gomez Dep.) at 56:18–57:5; 62:10–63:8, 65:24–66:18; Ex. D (Cortes Dep.) at 62:8–63:10.  Ruiz Fajardo filed the current lawsuit in December 2016.  *See* Dkt. No. 1.  After the lawsuit was filed, Flow agreed to send technicians to Colombia to inspect the machine and address any issues, which they did during the spring and summer of 2017.  Escobar Decl., Ex. E (Wakefield Dep.) at 9:13–19, 18:17–23.  After these visits by Flow, the System was returned to operation and Ruiz Fajardo continues to use the System as part of its business.  *Id.*, Ex. B (Ruiz Dep.) at 25:16–25; Ex. G (Solis' Supplemental Report).  Finally, since the System was installed in 2013, Ruiz Fajardo has never requested to return the System.

---

[3] The sales contract sates that "[t]he validity, interpretation and performance of the Agreement shall be governed by the laws of the State of Washington in effect at the time of contracting." *Id.* at 24 ¶ 14(a).

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

### III. ARGUMENT

**A. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motion," but need not produce evidence negating the opponent's claims. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). To survive a motion for summary judgment, the nonmoving party must "go beyond the pleadings and designate 'specific facts showing that there is a genuine issue for trial.'" *Id*.

The Supreme Court has explained that "the plain language of the rule mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

**B. Ruiz Fajardo Claim for Consequential Damages is Contractually Barred.**

Ruiz Fajardo seeks at least $996,723 in consequential damages based on lost profits supposedly caused by the System's alleged defects.[4] Escobar Decl., Ex. G (Solis' Supplemental Report) at 4. Flow maintains that Ruiz Fajardo is not entitled to any damages through the current lawsuit; however, even if Flow were found liable and Ruiz Fajardo could justify its damages figures, these consequential damages are not recoverable.

The sales contract provides:

> **9. LIMITATION OF DAMAGES**
> FLOW SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED

---

[4] In the present motion, Flow does request a ruling as to which damages Ruiz Fajardo seeks are appropriately considered consequential damages.

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

TO, LOSS OF PROFITS, LOSS OF USE, LOSS OF PRODUCTION, DAMAGES TO OTHER EQUIPMENT, COST OF CAPITAL OR INTEREST.

Escobar Decl., Ex. A (Contract) at 23 (emphasis in original).  This contractual term is separate and distinct from the sales contract's provision limiting the remedies Ruiz Fajardo may pursue to repair and replacement.  *See id.* at 22 ¶ 1(a).

Under Washington law, within a commercial setting, a limitation on consequential damages is valid "unless it is established that the limitation is unconscionable."  RCW 62A.2-719(3).  In Washington, clauses limiting consequential damages in purely commercial transactions, as the one here, are prima facie conscionable and the burden of establishing unconscionability is on the party attacking the clause.  *See, e.g.*, *Am. Nursery Prod., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990).

Here, the consequential damages limitation was prominently displayed within the sales contract, which was agreed to by sophisticated business entities.  Ruiz Fajardo makes no allegation that the consequential damages limitation is unconscionable, *see* Dkt. No. 1, ¶¶ 44–46 (discussing basis for damages), and admits in its complaint that "[t]he contract **conspicuously** disclaims liability for incidental and consequential damages, including loss of profits, loss of use, and loss of production." Dkt. No. 1 at 3 ¶ 10 (emphasis added).  Ruiz Fajardo cannot make any valid argument that the clause is unconscionable.  Accordingly, this contractual term should be enforced.

Ruiz Fajardo, however, claims that because the sale contract's exclusive remedy of repair and replacement allegedly failed of its essential purpose, the separate contractual limitation on consequential damages can be disregarded.  Not so.  Although Washington courts have not answered whether the failure of an exclusive remedy clause vitiates the validity of a conscionable limitation on consequential damages, *see Am. Nursery*, 115 Wn. at 228, the Sixth Circuit and Judge Babcock in the District of Colorado have both held that—under Washington law—the failure of a contract's limited remedy does invalidate a clause limiting consequential damages.  *See Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 435 (6th Cir. 1983); *ADT Sec. Servs., Inc.*

*v. Envision Telephony, Inc.*, No. 07-CV-01234-LTB-CBS, 2008 WL 5064268, at *6 (D. Colo. Nov. 21, 2008).

The Sixth Circuit, in *Lewis Refrigeration*, held that under Washington law, the failure of a contract's limited remedy does not affect the validity of a clause limiting consequential damages. In reaching this conclusion, the Sixth Circuit, acknowledging that no Washington court had reached the question, analyzed the text of subsections (2) and (3) of RCW 62A.2-719.[5] *Lewis Refrigeration*, 709 F.2d at 434. The court found that, "absent the specific language of subsection (3), the general language of subsection (2) would seem to cover the issue of consequential damages. Since it is a basic principle of statutory construction that the particular governs over the general, we believe that the section 2–719 drafters intended subsection (3) to deal with the issue of consequential damages." *Id.* at 434–35.

The Sixth Circuit also observed that UCC 2-719(3), which is substantively identical to RCW 62A.2-719(3), is designed to "allow merchants to allocate business risks" and that "[t]his purpose"—*i.e.*, the ability to allocate risks—"is consonant with the general UCC philosophy of freedom in commercial transactions." *Lewis Refrigeration*, 709 F.2d at 433 n.8, 435 (citing Official UCC comment to UCC 2-719(3)). "Taking these two statutory policies together, we believe that section 2–719(3) is meant to allow freedom in excluding consequential damages unless a consumer is involved in the contract. This freedom would be abridged by the sweeping interpretation of subsection (2) applied by the district court." *Id.* at 435.

---

[5] RCW 62A.2-719 reads in relevant part:

> (2) Where circumstances cause an exclusive or limited remedy to fail of it essential purpose, remedy may be had as provided in this Title.
>
> (3) Limitation of consequential damages for injury to the person in the case of goods purchased primarily for personal, family or household use or of any services related thereto is invalid unless it is proved that the limitation is not unconscionable. Limitation of remedy to repair or replacement of defective parts or non-conforming goods is invalid in sales of goods primarily for personal, family or household use unless the manufacturer or seller maintains or provides within this state facilities adequate to provide reasonable and expeditious performance of repair or replacement obligations.
>
> Limitation of other consequential damages is valid unless it is established that the limitation is unconscionable.

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

Finally, the Sixth Circuit noted that a larger number of courts "have construed subsection (3) of UCC 2-719 as the governing provision on the issue of consequential damages." *Lewis Refrigeration*, 709 F.2d at 434 (collecting cases). Indeed, the majority or courts treat consequential damages limitations and limited remedies independently. *See Pierce v. Catalina Yachts, Inc.*, 2 P.3d 618, 622 (Alaska 2000) ("the majority of jurisdictions view these subsections to be independent"); *McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1197 (2d Cir. 1995) (NYSEG's position ignores the distinction between exclusive remedy provisions, which fall under section 2–719(2), and exclusions of incidental or consequential damages, which are governed under section 2–719(3)."); *Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir. 1980) ("It appears to us that the better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable."); *Riegel Power Corp. v. Voith Hydro*, 888 F.2d 1043, 1047 (4th Cir. 1989) ("[T]he more recent cases indicate that the two provisions are independent and are to be applied as such.").

Consistent with these cases, Judge Babcock in 2008, applied *Lewis Refrigeration* and held that **under Washington law**, a consequential damages limitation that is conscionable remains valid regardless of whether a limited remedy fails of its essential purpose. *See ADT*, 2008 WL 5064268, at *6. In *ADT*, just as here, plaintiff ADT argued that 'the Contract's Remedies provision, which is separate from the Contract's Limitation of Liability provision that precludes the recovery of consequential damages, failed in its essential purpose to give ADT the substantial benefit of its bargain by limiting the available remedies to repair or replacement of its products or refund of the license fee paid and that the Contract's Limitation of Liability provision is therefore unenforceable." *Id.* The court disagreed.

The *ADT* court found that although the Washington Supreme Court has not decided the question, the Sixth Circuit's reasoning in *Lewis Refrigeration* was on point and decided the issue. *ADT*, 2008 WL 5064268, at *6. Specifically, the court found "persuasive" the Sixth Circuit's reasoning that "RCW 62A.2–719(2) did not govern the recovery of consequential damages, which

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

were excluded by a separate contractual provision" because of "the basic principle of statutory construction that the particular governs over the general." *Id.* In other words, the specific statutory provision dealing with consequential damages governed over the general provision regarding all remedies.

The court in *ADT* additionally found the Sixth Circuit's reason buttressed by "the recognition that Washington courts have given to the importance of freedom of contract in commercial settings." *ADT*, 2008 WL 5064268, at *6 (citing *Watson v. Ingram*, 124 Wn.2d 845, 881 P.2d 247 (1994) ("As this court has previously explained, '[w]e are loathe to interfere with the rights of the parties to contract as they please among themselves ....'")); *see also Jenson v. Richens*, 74 Wn. 2d 41, 42, 442 P.2d 636 (1968) ("One of the long-cherished rights afforded by a free society is that of freedom to contract. Within the rules which separate the lawful from the unlawful, a competent person may contract with any person on whatever terms he chooses."); *Nw. Airlines v. Hughes Air Corp.*, 37 Wn. App. 344, 348, 679 P.2d 968 (1984) ("Freedom of contract is the general condition. Public policy must not interfere with that freedom except for good reason.").[6]

The *ADT* court "therefore conclude[d] that Washington courts are likely to find that the failure of a limited remedy does not invalidate a separate exclusion of consequential damages that is not unconscionable." *ADT*, 2008 WL 5064268, at *6.[7]

---

[6] Washington courts are especially loath to interfere with the negotiated terms of commercial parties. In *American Nursery*, for example, the Washington Supreme Court declined to require exclusionary clauses to be explicitly negotiated between commercial parties, as in consumer sales transactions. *Am. Nursery*, 797 P.2d at 482. The Court noted that such a holding "would unnecessarily interfere with the freedom to contract in the commercial context. In consumer sales transactions, intervention is warranted to counteract the inherent inequality of bargaining power and the resultant inequities. Parties to a commercial contract, however, generally have equal bargaining power and an equal ability to seek advice and alternative offers."

[7] Nearly thirty years ago, the Ninth Circuit also took up the question of whether failure of a remedy clause precluded a limit on consequential damages, finding that "under Washington law, the failure of a repair remedy does not automatically remove a cap on consequential damages" and that only where a consequential damages limitation and an exclusive remedy limitation are "inseparable parts of unitary package of risk" does the failure of an exclusive remedy affect a consequential damages limitation. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 708 (9th Cir. 1990). Despite it supporting Flow's position, Flow does not rely on *Milgard's* approach here because this opaque "case-by-case approach," has been "applied relatively infrequently" and has been critiqued as "lead[ing] to results which are difficult to reconcile with the provisions of the UCC, and has been criticized as having no basis in the UCC or its comment." *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 92, 854 N.E.2d 607, 618 (2006) (citing D. Hagen, Note, *Sections 2–719(2) & 2–719(3) of the*

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

Here, the reasoning of *Lewis Refrigeration* and *ADT* is squarely on point. The parties in the present case entered into a sales contract with several different provisions that allocated risk between the parties. Escobar Decl., Ex. A. One of these provisions limited the remedies available to Ruiz Fajardo, while a separate provision agreed to by the parties stated that Flow would not be liable for consequential damages. *See id.*, Ex. A (Contract) at 22 ¶ 1(a), 23 ¶ 9. Regardless of whether the remedies provision fails of its essential purpose, the validity of the consequential damages limitation is governed by RCW 62A.2-719(3) and is enforceable.

C. **Ruiz Fajardo Is Limited to Claiming Breach of the Express Warranty Contained in the Sales Contract.**

Ruiz Fajardo's complaint indicates that its breach of warranty claim is based only on the one express warranty provided in the sales contract. *See* Dkt. No. 1 at 3 ¶ 10 ("Flow's purchase contract with Ruiz Fajardo includes a limited quality warranty by which 'Flow warrants the Equipment to be free from defects in workmanship and materials for the period specified on the quotation, expect that spare parts shall be warranted for a one-year period.'") (quoting Escobar Decl., Ex. A (contract) at 22 ¶ 1(a)); *id.* at 12 ¶ 10 (mentioning no other warranty besides the contract's limited warranty and stating "Flow also breached its warranty to Ruiz Fajardo.").

During discovery, Ruiz Fajardo confirmed that the only warranty it is seeking to enforce in this litigation is the express warranty contained in the sales contract. At Ruiz Fajardo's Rule 30(b)(6) deposition, the company's representative testified that the warranty on which it is basing its claims is the one contained in the contract. *See* Escobar Decl., Ex. B (Ruiz Dep.) at 81:5–17 ("Q The warranty that is referenced in this paragraph is the warranty that is in the contract; correct? A Yes…. Q … And I understand -- you know, I'm not going to ask you about the application, but I just wanted to be clear that that is the warranty that's referenced here upon which Ruiz Fajardo is basing is its claims; correct? A Yes, because that was the two-year warranty that was going to start once I got the machine.").

---

*Uniform Commercial Code: The Limited Warranty Package & Consequential Damages*, 31 Val. U. L. Rev. 111, 131 (1996)).

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

Based on Ruiz Fajardo's pleading and statements in discovery, Flow seeks an order from the Court that Ruiz Fajardo is limited to claiming a breach of the express warranty contained in the sales contract. Flow brings this motion to ensure that Ruiz Fajardo does not, now after discovery has closed, change its claims and assert its warranty cause of action is based on express or implied warranties that it never revealed in its pleading or during the course of discovery. *See, e.g.*, *Stations W., LLC v. Pinnacle Bank of OR*, 338 F. App'x 658, 660 (9th Cir. 2009) ("The district court did not abuse its discretion in declining to consider the theory, first advanced in response to BP's motion for summary judgment, that BP trespassed before the foreclosure sale. Changing the basis of liability at that point would have effectively amended the complaint after the close of discovery and initiation of summary judgment proceedings."); *Elizabeth Retail Properties, LLC v. KeyBank Nat'l Ass'n*, No. 3:13-CV-02045-SB, 2017 WL 1407662, at *13 (D. Or. Mar. 10, 2017) ([T]he Court declines to consider this new theory of liability because KeyBank would be prejudiced by the fact that it was not included in Plaintiffs' First Amended Complaint.").

Finally, Flow notes that Ruiz Fajardo likely chose to limit its warranty claim to the express warranty contained in the contract because the sales contract conspicuously disclaims all warranties other than the limited express warranty contained in the sales contract. The contract states:

> **2. LIMITATION OF WARRANTIES**
> EXCEPT AS PROVIDED IN SECTION 1 ABOVE, FLOW MAKES NO OTHER WARRANTIES TO BUYER, EXPRESS OF IMPLIED, AND HEREBY EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Escobar Decl., Ex. A (Contract) at 22 ¶ 2. Ruiz Fajardo acknowledged this provision in its complaint, stating "[t]he contract conspicuously disclaims all other quality warranties, including merchantability and fitness for a particular use," and made no allegation that the clause was invalid for any reason. *See* Dkt. No. 1 at 3 ¶ 10.[8]

---

[8] Should Ruiz Fajardo now for the first time allege it is seeking to invalidate the contract's warranty limitation, such an attempt is barred pursuant to the case law discussed above. *See, e.g.*, *Stations*, 338 F. App'x at 660. Regardless, should Ruiz Fajardo make the substantive argument that the warranty limitation is somehow invalid because the separate remedy

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

The Court should find that the only warranty on which Ruiz Fajardo can base its claims is the limited express warranty contained in the sales contract.

### D. The Sales Contract's Warranty Extended Only One Year Until May 3, 2014.

The plain language of the sales contract entered into by the parties states that the "warranty term is two (2) years from the system shipment or 4000 hours, whichever comes first…. In order to qualify for this warranty period, at least one person within the customer's organization assigned to maintain the equipment must attend a free system maintenance training course prior to or within three (3) months of system installation. If training is not elected, a one (1) year warranty will apply." Escobar Decl., Ex. A (Contract) at 19. The contract explains this 4-day training course, stating "Flow will provide …. [f]our (4) days of system training for up to two people in Jeffersonville, Indiana (Louisville) or Kent, Washington (Seattle). The training will include operation and programming training on the X-Y machine and maintenance training for the high-pressure system…. Flow recommends that training occur prior to installation as it will be required for operating the system." Escobar Decl., Ex. A (Contract) at 15.

It is undisputed that the System was shipped to Ruiz Fajardo in early May 2013. Escobar Decl., Ex. A (Contract) at 1. The System was installed in September 2013. Escobar Decl., Ex. F. No representative from Ruiz Fajardo attended a system maintenance course either before the System was installed, or within three months of the September 2013 installation Escobar Decl., Ex. B (Ruiz Dep.) at 96:21-24. Thus, under the plain language of the contract and the undisputed facts, Ruiz Fajardo received only a one-year warranty, which started in May 2013 and ended in May 2014.

### E. Ruiz Fajardo Did Not Reject Acceptance of the System.

Ruiz Fajardo accepted the System in September of 2013, and despite claiming that it did not function properly since it was installed, Ruiz Fajardo has never indicated that it wished to revoke acceptance and return the machine; rather, Ruiz Fajardo accepted Flow's offers to help it operate the

---

provision fails of its essential purpose, the argument would fail under an analysis similar to the one discussed at length above regarding specific statutory provisions governing rather than the general remedy provision.

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

System and continues to use it to this day.  Based on these undisputed facts, Ruiz Fajardo cannot claim it has at any time revoked its acceptance of the System.

Revocation of acceptance does not occur under Washington law unless the buyer takes a series of steps.  First, the buyer must notify the seller of revocation.  *Hays Merchandise, Inc. v. Dewey*, 78 Wn.2d 343, 348 (1970).  Although notice of revocation need not be in any particular form, it must at least inform the seller that the buyer does not want the goods and does not desire to retain them.  *See Allis-Chalmers Corp. v. Sygitowicz*, 18 Wn. App. 658 (1977) (holding that alerting the seller of an oil leak in the buyer's tractor, while possibly a notice of breach, was not proper notice of revocation when the buyer gave no intent of returning the tractor).  Second, the notice must be brought within a reasonable time.  *See Peter Pan Seafoods, Inc. v. Olympic Foundry, Co.*, 17 Wn. App. 761, 770 (1977) (holding that a buyer who was aware of the defect from almost the first day of possession who did not notify the seller of revocation until almost six months later did not provide notice of revocation within a reasonable time).  Third, even if revocation is timely, revocation does not occur if the buyer, after a purported revocation, maintains dominion over the goods in a way that is inconsistent with revocation.  *See, e.g.*, *Hays Merchandise*, 78 Wn.2d at 349 ("Even if the notice of revocation had been given in early December and if this were considered timely, the buyer's subsequent acts of dominion over the goods are inconsistent with such claimed revocation. The buyer's acts of pricing, displaying, advertising and selling were for his own account and were not in keeping with his duty to use reasonable care in holding the goods at the seller's disposition for a reasonable time.").

Here, Ruiz Fajardo has not satisfied any steps required to effect revocation.  First, Ruiz Fajardo has never informed Flow that it wishes to return the System.  Although Ruiz Fajardo has notified Flow of certain purported issues with the System, informing a seller of issues with a good, which is possibly notification of a breach, is not an effective statement of the desire to revoke.  *See, e.g.*, *World Wide Lease, Inc. v. Grobschmit*, 21 Wn. App. 537, 548, 586 P.2d 889 (1978) ("[N]otice of breach is not equivalent to notice of revocation of acceptance. While the latter need not be in any particular form

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

and may be implied by conduct, it must inform the seller that the buyer does not wish to keep the goods.").

The first and only time Ruiz Fajardo raised revocation in any way was in its complaint in this lawsuit, which was filed in December of 2016. *See* Dkt. No. 1. The complaint, however, does not state that Ruiz Fajardo wishes to revoke acceptance of the System or make the factual claim that revocation was somehow effectuated at an earlier date. *See generally* Dkt. No. 1. Rather, the complaint in the "Charging Allegations" section provides only a recitation of the remedies available to a rightfully revoking buyer as part of the complaint's explanation of one of its alternative theories of liability, *see id.* at ¶¶ 38–40, and makes no statement that Ruiz Fajardo wishes to or did revoke. This recitation of the law stated as an alternative theory of liability is not a statement that Ruiz Fajardo wishes to return the System.

Even if Ruiz Fajardo filing the complaint were enough to notify Flow of its desire to revoke—which it was not—Ruiz Fajardo has not satisfied the other requirements of revocation. First, the complaint was filed in December 2016, *see* Dkt. No. 1, more than three years after the System was installed. Escobar Decl., Ex. A (Contract) at 1. This cannot be considered a timely revocation of acceptance, especially given Ruiz Fajardo's claim that there was no delay in it experiencing purported problems with the System. *Id.*, Ex. C (Ruiz Dep.) at 22:11–23; *see Peter Pan Seafoods*, 17 Wn. App. 770 (1977) ("[I]t appears that the buyer was aware of the alleged defect almost from the day the engine was put into use in June of 1971. Yet, no notice was given to the seller of revocation until May of 1972. The Uniform Commercial Code imposes a duty of good faith upon all its transactions, RCW 62A.1-203; a delay of nearly 6 months by the buyer in informing the seller of his intended revocation is insufficient compliance with the good faith obligation.").

Second, even if the complaint constituted sufficient notice of revocation and such notice was timely, Ruiz Fajardo has maintained dominion over the System in ways that are plainly inconsistent with revoking acceptance of System. It is undisputed that after filing the complaint, Ruiz Fajardo agreed to have Flow's technicians travel to Colombia to help them continue to operate the System, *see*

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

Escobar Decl., Ex. E (Wakefield Dep.) at 9:13–19, 18:17–23, and since that time Ruiz Fajardo has continued to use the System to generate profits for its business. *Id.*, Ex. G (Solis' Supplemental Report) at 3, 3 of 22; *see Hays Merchandise*, 78 Wn.2d at 349 ("Even if the notice of revocation had been given in early December and if this were considered timely, the buyer's subsequent acts of dominion over the goods are inconsistent with such claimed revocation.").

The undisputed facts establish that despite pleading revocation as an alternative theory of liability in its complaint, Ruiz Fajardo has never actually indicated it wishes to revoke acceptance of System. Additionally, even if the filing of the complaint is construed as a request for revocation, which it is not, such revocation was untimely and Ruiz Fajardo subsequent acts, which are wholly inconsistent with any desire to return the System, void any purported request contained in the complaint. The Court should find that revocation of acceptance has not occurred.

## IV.   CONCLUSION

For all of the foregoing reasons, Flow respectfully requests that the Court grant its motion for partial summary judgement.

Respectfully submitted this 25th day of October, 2018.

DLA PIPER LLP (US)

*s/ Andrew R. Escobar*
Andrew R. Escobar, WSBA No. 42793
Jeffrey DeGroot, WSBA No. 46839
701 Fifth Avenue, Suite 6900
Seattle, Washington  98104-7029
Tel:   206.839.4800
Fax:   206.839.4801
E-mail:  andrew.escobar@dlapiper.com
E-mail:  jeffrey.degroot@dlapiper.com

Attorneys for defendant
Flow International Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the parties.

Dated this 25th day of October, 2018.

*s/ Andrew R. Escobar*
Andrew R. Escobar, WSBA No. 42793

WEST\283801789.2

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 16
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800