HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUIZ FAJARDO INGENIEROS ASOCIADOS S.A.S., <br><br> Plaintiff, <br><br> v. <br><br> FLOW INTERNATIONAL CORPORATION, <br><br> Defendants. | CASE NO. C16-1902 RAJ <br><br> ORDER |

This matter comes before the court on Defendant Flow International Corporation's ("Defendant" or "Flow") Motion for Partial Summary Judgment ("Motion"). Dkt. # 32. Plaintiff Ruiz Fajardo Ingenieros Asociados S.A.S. ("Plaintiff" or "Ruiz Fajardo") has opposed this Motion, and Defendant has filed a Reply. Dkt. ## 34, 37.

Plaintiff has also filed a "Praecipe" to a declaration attached to its Response, and Defendant filed a Surreply addressing this filing. Dkt. ## 39-41.

For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

## I. BACKGROUND

Defendant Flow is a Washington-based corporation which manufactures and sells industrial waterjet cutting machines. Plaintiff Ruiz Fajardo is a Colombian engineering firm that provides metalworking services including prefabrication, installation, and consulting. Dkt. # 1 at ¶ 8. On November 5, 2012, the parties entered into an agreement (the "Contract") for the purchase of a Mach 4030c waterjet cutting machine (the "Machine") for $437,830.00, after Tulio Ruiz, Plaintiff's principal and legal advisor traveled to Kent, Washington to execute the Contract. Dkt. # 33, Ex. A at 2, 4-5. In January 2013, after Plaintiff agreed to purchase the Machine, but before payment was made, Defendant sent the complete Contract to Plaintiff along with an invoice for the cost of the Machine, which Plaintiff signed after translating the Contract. *Id*. at Ex. B, 63:5-66:23.

The Contract contains three provisions applicable here. First, in paragraph 1(a) in the Terms and Conditions, on page 22 of the Contract, the Contract contains a clause limiting the remedies Plaintiff may pursue, which states:

> Flow warrants the Equipment to be free from defects in workmanship and materials for the period specified on the quotation, except that spare parts shall be warranted for a one-year period…. Flow's liability is limited to repair or replacement of the Equipment and the determination regarding which of these is appropriate shall be at Flow's sole discretion.

Dkt. # 33, Ex. A at 24. Second, in paragraph 2, the contract contains a clause disclaiming warranties other than the one expressly contained in paragraph 1(a):

> **2. LIMITATION OF WARRANTIES**
> EXCEPT AS PROVIDED IN SECTION 1 ABOVE, FLOW MAKES NO OTHER WARRANTIES TO BUYER, EXPRESS OF IMPLIED, AND HEREBY EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

*Id.* at 25.  Finally, in paragraph 9, the Contract limits the damages available to Ruiz Fajardo, and restates the remedy limitation to repair and replacement:

> **9. LIMITATION OF DAMAGES**
>
> FLOW SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OF USE, LOSS OF PRODUCTION, DAMAGES TO OTHER EQUIPMENT, COST OF CAPITAL OR INTEREST. FLOW'S LIABILITY IS LIMITED TO REPAIR OR REPLACEMENT OF THE EQUIPMENT AND THE DETERMINATION REGARDING WHICH OF THESE IS APPROPRIATE SHALL BE AT FLOW'S SOLE DISCRETION.

*Id.*  The Contract also states that "[t]he validity, interpretation and performance of the Agreement shall be governed by the laws of the State of Washington in effect at the time of contracting." *Id*. at ¶ 14(a).

Plaintiff paid for the Machine, and Defendant shipped the Machine to Plaintiff in early May 2013.  *Id*. at 2.  The Machine was installed by Flow technicians at Ruiz Fajardo's facility outside Bogota, Colombia in fall 2013.  Dkt. # 33, Ex. F.  After receiving the Machine, Plaintiff contends it began experiencing several significant system problems with the Machine, including: (1) startup issues, including the failure of the automatic start mechanism requiring a manual start-up process; (2) software unable to produce accurate cutting time, requiring Plaintiff to perform simulations within the Machine itself; (3) a cutting speed that was lower than what Defendant described; and (4) poor durability of parts.  *See* Dkt. # 34 at 6-7; Dkt. # 35, Exs. 8-14.  Plaintiff also contends that Defendant did not keep any spare replacement parts in South America, leading to further delays in repairs.  *Id*.[1]  Plaintiff describes multiple efforts by Defendant

---

[1] In support of these claims, Plaintiff submits translated versions of e-mail conversations between the two parties.  Dkt. # 35, Exs. 8-14.  Plaintiff later submitted a Praecipe attaching affidavits from translators attesting to the accuracy of these translations.  Dkt. # 39.  Defendant's Surreply and motion to strike, which address the reliance on these documents, are addressed below.

to repair the issues with the Machine, the majority of which were unsuccessful in definitively resolving the issues with the Machine. Defendant's repair efforts included sending technicians to Columbia to help troubleshoot issues, and delivery of software and replacement parts. *Id*. According to Plaintiff, it took roughly 15 months to resolve the start-up issues, and the other issues remained unresolved until after the filing of this lawsuit.

In February 2016, according to Plaintiff, the Machine stopped working. *See, e.g.*, Dkt. # 35, Ex. 8. Plaintiff contacted Defendant for technical service, and Defendant sent a representative who confirmed that the actuator needed to be replaced; Plaintiff contends it was not able to obtain this replacement part from Defendant. *Id.*; Dkt. # 34 at 13. Plaintiff then filed the current lawsuit in December 2016. Dkt. # 1. After the lawsuit was filed, Flow agreed to send technicians to Colombia to inspect the machine and address any issues, which they did during the spring and summer of 2017. Dkt. # 33, Ex. E; Dkt. # 35, Ex. 8. Defendant repaired the Machine in July 2017. Dkt. # 35, Ex. 14. Defendant installed new "Rev J" software and repairs, which Plaintiff contends fixed most issues, though issues with Z-axis cuts still persist. *Id*. Plaintiff continues to use the Machine as part of its business. Dkt. # 33, Exs. B, G.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support

the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

### III. DISCUSSION

As a preliminary matter, Defendant's Reply includes a motion to strike certain of Plaintiff's exhibits that did not, in Plaintiff's original filing, include a translator's affidavit. Dkt. # 37 at 16. Plaintiff then filed a "Praecipe" after Defendant filed its Reply attaching a number of translators' affidavits attesting to the accuracy of those translated exhibits. Dkt. Dkt. # 39. This prompted Defendant to follow with a Surreply, arguing the Court should strike this Praecipe. Dkt. # 41.

Under W.D. Wash. Local Rule 7(m), if an error is discovered, a party may file a Praecipe with the new documents to support a previous filing which sets forth "why the document was not included with the original filing." Plaintiff's Praecipe states it exists to

provide the Court with translator's affidavits for several exhibits attached to Plaintiff's declaration that were translated to English. Dkt. # 39. Plaintiff's Praecipe does not change the character of the relevant exhibits in Plaintiff's Declaration. If Defendant had concerns about the accuracy of the translations, it could have raised them in its Reply or Surreply; instead, Defendant focused its efforts on claiming that Plaintiff hadn't properly authenticated its translations with translators' affidavits. Dkt. # 37 at 16. Because Defendant has failed to adequately articulate any prejudice that could result from allowing Plaintiff's Praecipe to stand, the Court **DENIES** Defendant's request to strike these exhibits.

In its Motion, Defendant argues that it is entitled to summary judgment on specific portions of Plaintiff's claims. Specifically, Defendant seeks summary judgment on the following: (1) whether the consequential damages limitation contained in the Contract is enforceable; (2) whether the only warranty in which Plaintiff can base its breach of warranty claim is the single express limited warranty contained in the Contract, and if so, whether the terms of the warranty mandate that the warranty extends for only one year after the date of shipment; and (3) whether Plaintiff revoked its acceptance of the Machine. Dkt. # 32 at 5-6. The Court addresses each issue in turn.

**A. Limitation of Consequential Damages**

Defendant requests summary judgment on the issue of whether Plaintiff is bound by the Contract's limitation on seeking consequential damages. Dkt. # 32 at 9-14. Under Washington law, contractual limitations on damages are generally valid unless they are unconscionable. *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wash. 2d 568, 585, 998 P.2d 305, 314 (2000). Limitations of liability for incidental and consequential damages in purely commercial transactions are prima facie conscionable, and the burden of establishing unconscionability falls on the party attacking the clause. *Am. Nursery Prods., Inc. v. Indian Wells Nursery*, 797 P.2d 477, 480-81 (1990); *Puget Sound Fin.,*

*L.L.C. v. Unisearch, Inc.*, 146 Wash. 2d 428, 438 n. 12, 47 P.3d 940, 944 (2002) (noting that exclusionary clauses and liability limitation clauses are subject to the same analysis).

Both parties recognize that the Contract contains a limitations on damages clause, and Plaintiff does not contend that this limitation is unconscionable. Rather, Plaintiff contends that it is not bound by this clause because the Contract's limited repair-or-replace remedy failed its essential purpose. Dkt. # 34 at 15-20. Washington's Uniform Commercial Code permits parties to a contract to agree to "limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." RCW 62A.2-719(1). This section also provides, however, that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title." RCW 62A.2-719(2). Under the Washington UCC, a limitation of remedy clause is ineffectual when it deprives a party of the substantive value of its bargain. RCW 62A.2–719. Limited remedies clauses fail of their essential purpose when, for instance, "the seller or other party required to provide the remedy, by its action or inaction, causes the remedy to fail." *Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir. 1977) (citing with approval cases which hold that a remedy fails of its essential purpose where "the seller fail[s] to replace or repair in a reasonably prompt and non-negligent manner"). Courts in this circuit and others generally hold that whether a limitation fails its essential purpose is an issue of fact for the jury. *See, e.g.*, *Tokyo Ohka Kogyo Am., Inc. v. Huntsman Propylene Oxide LLC*, 35 F. Supp. 3d 1316, 1330 (D. Or. 2014) (citing cases).

Here, the Contract limited Plaintiff's available remedies to "repair or replacement of the Equipment and the determination regarding which of these is appropriate shall be at [Defendant]'s sole discretion." Dkt. # 33, Ex. A, at p. 25, ¶ 9. The same clause states that Defendant "shall not be liable for incidental or consequential damages including, but not limited to, loss of profits, loss of use, loss of production, damage to other equipment,

cost of capital or interest." *Id.* Plaintiff's claims are essentially predicated on allegations that Flow's repair efforts were delayed and deficient. Dkt. # 1 at 12-13. Plaintiff has introduced substantial evidence to this effect in the form of Defendant's own statements admitting delays in repair and deficiencies in some aspects of the product, such as poor quality parts, and software that was required for the Machine to function properly that was not present until well after the Machine was delivered, despite years of Defendant's repair efforts. *See* Dkt. # 35, Exs. 8-13. For instance, Plaintiff has introduced evidence that it took four years for Defendant to provide Plaintiff with the software necessary to resolve the cutting time simulation issue. Dkt. # 35, Ex. 8 at 12. Under Washington State law, a limited repair warranty is deemed ineffective and fails of its essential purpose if the breaching manufacturer is unable to repair a purported defect within a reasonable time. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 707-08 (9th Cir. 1990). In *Milgard*, for instance, the Ninth Circuit held that under Washington law, a glass tempering furnace seller's failure to repair a furnace after two and one-half years made the contractual repair-or-replace remedy provision ineffective and invalidated the contractual consequential damages exclusion. *Milgard*, 902 F.2d at 703. Similarly, a jury could reasonably find, given this evidence, that Defendant failed to repair the Machine in a reasonable time, and because of this failure the limitations of remedy clause fails its essential purpose – to provide Plaintiff with an adequate remedy in the event repairs were needed. Should the limitations of remedies clause then fail, so too would the limitation on seeking consequential damages.

      Defendant largely does not contest Plaintiff's allegations of delayed or deficient repairs, but instead relies heavily on two out-of-circuit cases, *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 435 (6th Cir. 1983) and *ADT Sec. Servs. Inc v. Envision Telephony Inc.,* No 07-CV-01234-LTB-CBS, 2008 WL 5064268 (D. Colo. Nov. 21, 2008), to argue that regardless of whether the limited remedy in the Contract failed its essential purpose, the limitation on damages remains effective.

Dkt. # 32 at 10-14. Both cases analyzed Washington law and held that the failure of a contract's limited remedy does not render a limitation on consequential damages invalid. *Lewis Refrigeration*, for instance, reasoned that "Section 2–719(3) is meant to allow freedom in excluding consequential damages unless a consumer is involved in the contract." *Lewis Refrigeration*, 709 F.2d at 435. Defendant also submits additional cases from other circuits and states following this approach. Dkt. # 32 at 12; Dkt. # 37 at 8. However, the Court is not bound by these cases and does not find them persuasive here. *Lewis Refrigeration*, for instance, was explicitly disclaimed by the Ninth Circuit in *Fiorito Bros., Inc. v. Fruehauf Corp.,* 747 F.2d 1309, 1314–15 (9th Cir. 1984) ("We are not bound by *Lewis Refrigeration*, of course, and decline to follow it"). *ADT* is an unpublished Colorado case, disclaimed key decisions under Washington law, and has never been cited approvingly in this Circuit. Defendant has not submitted compelling Ninth Circuit or Washington authority that would deter this Court from applying the analytical framework set forth by the Ninth Circuit in *Milgard*. The Court believes, following *Milgard*, that a case-by-case approach is necessary and proper to determine whether in any given contract the limitations of remedy clause failed it essential purpose. In this case, Plaintiff has submitted sufficient evidence to survive summary judgment that the remedy provisions and Defendant's repair efforts "caused a loss which was not part of the bargained-for allocation of risk." *Milgard*, 902 F.2d at 709. As the *Milgard* court reasoned, Plaintiff did not pay $437,830 "in order to participate in a science experiment." *Id*.

Ultimately, the Court finds that there is a genuine issue of material fact as to whether the remedy limitation in the Contract failed its essential purpose, and whether the Contract's limitation on consequential damages is valid. Accordingly, the Court **DENIES** Defendant's Motion on this point.

## B. Limited Warranty

Defendant seeks summary judgment on two additional issues related to Plaintiff's breach of warranty claim: (1) whether Plaintiff is limited to claiming breach of the express limited warranty contained within the Contract; and (2) whether the Contract's limited warranty extended only one year after the date of shipment. Dkt. # 32 at 10-12. The Court will address each in turn.

First, the Court agrees with Defendant that the only warranty identified in Plaintiff's only Complaint (Dkt. # 1) is the limited warranty contained in the Contract. Dkt. # 32 at 15-16. The Court further notes that the limited warranty disclaimed all other warranties other than the limited warranty contained in the Contract. Dkt. # 33, Ex. A at p. 24, ¶ 2; *see also* Dkt. # 1 at p. 3, ¶ 10. Plaintiff responds that the disclaimer contained in the Contract was ineffective, and for the first time on summary judgment states its intention to rely on the implied warranty for fitness for a particular purpose. Dkt. # 34 at 20-24. The Court finds that Plaintiff's Opposition relies on new facts and legal theories that were not set forth in the Complaint. Plaintiff's Complaint makes no mention of any implied warranty claim or any pre-contractual discussions between the parties. The Court is disinclined to permit them at this juncture. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc) (when the necessary factual allegations to state a claim are not in the complaint, "raising ... [these allegations] in a summary judgment motion is insufficient to present the claim to the district court"). Defendant also presents evidence that throughout the litigation, the only warranty that Plaintiff asserted would form the basis for its claim was the limited warranty in the Contract. Dkt. # 38-1 at p. 4, ¶ 6. Changing case theories for the first time in summary judgment fails to provide Defendant with reasonable notice and opportunity to take discovery on this new claim, and frustrates the resolution of an already significantly delayed litigation.

Even if this Court were to consider Plaintiff's position, it would be inclined to reject it. "Where the seller at the time of contracting has reason to know any particular

purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." RCW 62A.2-315. However, as discussed above, the Contract contains a clause explicitly disclaiming this, and other, implied warranties. Warranty disclaimers are unenforceable enforceable if they are unconscionable. *Puget Sound Financial, L.L.C. v. Unisearch, Inc.*, 146 Wash.2d 428, 438, 47 P.3d 940 (2002). Courts use two different tests to determine whether a warranty disclaimer is unconsciobale in a commercial transaction: (1) the *Berg* test articulated in *Berg v. Stromme*, 79 Wash.2d 184, 484 P.2d 380 (1971); or (2) a totality of the circumstances approach. *American Nursery Products, Inc. v. Indian Wells Orchards*, 115 Wash.2d 217, 222, 797 P.2d 477, 481 (1990). Under the stricter *Berg* test, warranty disclaimers must be both explicitly negotiated and set forth with particularity. *American Nursery Products*, 115 Wash.2d at 223. However, under the "totality of the circumstances approach," which applies purely commercial transactions, the presumption is that the limitation is prima facie conscionable unless the party seeking to invalidate the liability limitation shows otherwise. *Id*. (citing *Schroeder v. Fageol Motors, Inc.*, 86 Wash.2d 256, 262, 544 P.2d 20 (1975)). The totality of the circumstances approach applies when there is no evidence of unfair surprise in the business dealing, while the *Berg* test applies when there is unfair surprise. *Id*. No unfair surprise exists when negotiations are "between competent persons dealing at arm's length, with no claim of an adhesion contract, when the contract contains a specific disclaimer and when the contract language is clear." *Id*.

As Defendant notes, the *Berg* rule is most properly applied in situations involving non-commercial consumers or unfair surprise, neither of which apply to the present dispute. Dkt. # 37 at 10-11. The record indicates that the Contract was formed between two sophisticated business entities engaging at arm's length. While Plaintiff argues this clause is unfair, it does not argue it was surprised or did not have an opportunity to

review the terms before it signed the Contract. Under the totality of the circumstances, the Court finds that Plaintiff has failed to show that the warranty disclaimer in the Contract was unconscionable. Accordingly, Plaintiff's newly-asserted claim for an implied warranty would be barred by the Contract's disclaimer.

Second, the Court also agrees with Defendant that by its terms, the warranty contained in the Contract extends only one year from the date in which the Machine was shipped, as Plaintiff concedes that it did not send any representative to participate in a system maintenance course per the terms of the Contract, which by its terms would have extended the warranty another year. Dkt. # 33, Ex. A (Contract) at 1-2. Plaintiff does not contest the fact that it did not attend the training that would have extended the warranty; rather, Plaintiff contends that both parties operated under the assumption that the warranty period would not start until Defendant delivered the Machine in good working order, and that holding otherwise would run counter to the intent of the parties. Dkt. # 34 at 23. Whether Plaintiff's position is supported by the record or not is essentially immaterial to the narrow question that is apparently before the Court, which is if the Contract's limited warranty, by its terms, is restricted to one year from the date of shipment. The answer to that question is yes. The question of whether Defendant's post-contractual representations or conduct had the effect of waiver of this provision, or if the warranty failed for some other reason, is not one that is the subject of Defendant's Motion. Plaintiff also fails to provide any legal authority explaining how these representations would affect the term of the limited warranty, and how they would affect the Contract's integration clause. Dkt. # 33, Ex. A at p. 27, ¶ 15(b).

Accordingly, the Court **GRANTS** on Defendant's Motion on these points. The Court finds that the only warranty upon which Plaintiff bases its breach of warranty claim is the limited warranty contained in paragraph 1(a) of the Terms and Conditions of the parties' Contract. The Court also concludes that by its terms, the limited warranty extended one year from the date of shipment of the Machine.

## C. Revocation of Acceptance

Defendant seeks summary judgment on the issue of whether Plaintiff revoked acceptance of the Machine. Dkt. # 32 at 12-14. Here, there is no dispute that Plaintiff accepted the Machine. However, acceptance of goods by the buyer does not of itself impair any other remedy provided by the statute for nonconformity. RCW 62A.2-607(2). Where goods have been accepted, the buyer must notify the seller of any breach within a reasonable time after he or she discovers or should have discovered the breach. RCW 62A.2-607(3). The notice of revocation of acceptance is not a requirement for a breach of warranty claim under the UCC. *Aubrey's RV Ctr. v. Tandy Corp.*, 46 Wn. App. 595, 600-601, 731 P.2d 1124 (1987). A buyer who fails to revoke his acceptance in accordance with the UCC must still pay the contract price of the goods, even though the buyer may thereafter recover damages. *Kysar v. Lambert*, 76 Wn. App. 470, 491, 887 P.2d 431, *review denied*, 126 Wn.2d 1019 (1995).

A revocation of acceptance "must inform the seller that the buyer does not wish to keep the goods." *Allis-Chalmers Corp. v. Sygitowicz*, 18 Wash. App. 658, 662, 571 P.2d 224, 226 (1977) (citations omitted). As Defendant notes, after filing the Complaint, Plaintiff continues to own, operate, and advertise the Machine, and has had the Machine it its sole possession since it was initially delivered. Dkt. # 32 at 18-19. In doing so, Defendant argues that Plaintiff continues to maintain "dominion" over the Machine, an act that is inconsistent with revocation. *Hays Merch., Inc. v. Dewey*, 78 Wash. 2d 343, 349, 474 P.2d 270, 273 (1970) ("Even if the notice of revocation had been given in early December and if this were considered timely, the buyer's subsequent acts of dominion over the goods are inconsistent with such claimed revocation. The buyer's acts of pricing, displaying, advertising and selling were for his own account and were not in keeping with his duty to use reasonable care in holding the goods at the seller's disposition for a reasonable time."). Based on the current record, the Court agrees with Defendant that Plaintiff did not inform Defendant that it wished to return the Machine.

Plaintiff argues that the filing of the Complaint constitutes revocation of acceptance, asserting that Washington law holds that filing a complaint, "without more," constitutes revocation of acceptance. Dkt. # 34 at 24-27. The Court disagrees. This argument misinterprets the holding of *Aubrey's* and *Fenton*, where the buyers did far more than file a lawsuit. *See Aubrey's*, 46 Wn. App. at 598-99 (1987) (rejecting buyer sending letter expressly asking for rescission of the contract and return of the purchase price before filing its lawsuit) and *Fenton v. Contemporary Dev. Co.*, 12 Wn. App. 345, 348, 529 P.3d 883 (1974) (holding that both filing lawsuit and refusing to allow repairs after the lawsuit together constitutes revocation of acceptance). Unlike the buyer in *Fenton*, for instance, who refused to allow the sellers to perform repairs on the trailer she purchased, here Plaintiff allowed Defendant to perform repairs on the Machine to bring it back to operation and for future use. Moreover, the noncommittal wording of Plaintiff's Complaint, which never actually states that Plaintiff is revoking, will revoke, or has revoked acceptance of the Machine, at best implies that revocation of acceptance is a potential theory of liability. Dkt. # 1. As Defendant notes, Plaintiff's Complaint presents revocation of acceptance and breach of warranty as two competing theories of liability, and does not clarify which version it definitively seeks. Dkt. # 1 at 11-13. Although Plaintiff's Complaint may indicate a desire to potentially seek legal remedies in connection with alleged breaches of contract and warranty, it does not evidence or allege an intent to return the Machine. Instead, Plaintiff's conduct both before and after filing its Complaint indicates that it wishes to keep the Machine and sue for damages incurred in the delays associated with Defendant's repair efforts. *See* Dkt. # 1. While Plaintiffs are allowed to plead in the alternative, Plaintiff gives no authority for why it should be allowed to do so and claim that this disjunctive pleading style constitutes adequate revocation of acceptance under Washington law.

Plaintiff further contends that the fact it continued using the Machine does not necessarily vitiate its purported revocation of acceptance. Dkt. # 34 at 25. While this is

theoretically true, in the facts of this case Plaintiff's conduct compels the opposite conclusion. For instance, it is undisputed that Plaintiff continued to fill orders using the Machine and advertise the Machine to its customers. It is also undisputed that after filing this lawsuit, Plaintiff welcomed representatives from Defendant who performed repairs on the Machine, which Plaintiff continues to use as part of its business. These actions are inconsistent with a revocation of acceptance.

Ultimately, outside of the loosely-worded Complaint, the Court finds little indication that Plaintiff gave any proper notice to Defendant that it intended to revoke acceptance or return the Machine. Plaintiff's actions, as shown in the record, indicated that it intended to maintain dominion over the Machine. Accordingly, the Court **GRANTS** Defendant's Motion on this point. The Court finds that Plaintiff has not revoked its acceptance of the Machine.[2]

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Partial Summary Judgment. Dkt. # 34.

Dated this 27th day of December, 2018.

_Richard A. Jones_
The Honorable Richard A. Jones
United States District Judge

---

[2] Because this Court finds that Plaintiff has not revoked acceptance, it need not address the parties' arguments of whether Plaintiff waited an unreasonable amount of time before revoking acceptance.