THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUIZ FAJARDO INGENIEROS ASOCIADOS S.A.S., a foreign corporation,

Plaintiff,

v.

FLOW INTERNATIONAL CORPORATION, a Delaware corporation,

Defendant.

No. 2:16-cv-01902-RAJ

**DEFENDANT FLOW INTERNATIONAL CORPORATION'S TRIAL BRIEF**

Trial Date: January 28, 2019

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## I. INTRODUCTION

This case arises from Plaintiff Ruiz Fajardo Ingenieros Asociados S.A.S.'s ("Plaintiff" or "Ruiz Fajardo") purchase of a waterjet cutting machine from Defendant Flow International Corporation ("Defendant" or "Flow") and Plaintiff's failure to operate the machine. The primary issues at trial will be:

1. Did Flow breach the purchase contract's express warranty, which warrants the machine will be "free from defects in workmanship and materials" during the one-year warranty term?

2. Is Ruiz Fajardo bound by the limitation of damages clause in the parties' contract, limiting Ruiz Fajardo's recovery to repair or replacement of the machine, or did the clause fail its essential purpose?

3. If Ruiz Fajardo is able to prove that the contract's limitation of damages clause failed its essential purpose, is Ruiz Fajardo entitled to damages, including damages for profits that were supposedly lost from a new and untested line of business?

4. Should Ruiz Fajardo's damages be reduced by its own failure to use other available means to complete metal cutting to mitigate its damages?

The law and facts at issue in this case favor Flow. Ruiz Fajardo purchased a complex machine it was unprepared to handle, failed to attend Flow's recommended comprehensive four-day training session, and declined to follow Flow's recommended operation and maintenance procedures. Indeed, after Plaintiff filed the present lawsuit, Flow technicians traveled to Colombia to inspect the machine and discovered that the issues about which Ruiz Fajardo was complaining were the result of Ruiz Fajardo's failure to follow the specified procedures—procedures that were either covered in the machine's manual, would have been covered at the comprehensive training, or both—for starting the machine, shutting down the machine, and estimating cutting times. Put simply, Ruiz Fajardo was sold a working complex machine it was not prepared to operate.

## II. BACKGROUND

Flow, a waterjet manufacturing company based in Kent, Washington, manufactures and sells industrial waterjet cutting machines. Plaintiff Ruiz Fajardo is a company based in Colombia that provides various metalworking services. In November 2012, the parties entered into a contract for the

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 1
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

purchase of a Mach 4 waterjet cutting machine. Specifically, on November 5, 2012, following communications between the parties, Tulio Ruiz, Ruiz Fajardo's principal and legal advisor, traveled to Kent, Washington and executed a sales contract for purchase of the machine for $437,830.00.

The sales contract, which is to be interpreted in accordance with Washington law, contains two separate applicable provisions. First, in paragraph 1(a) in the Terms and Conditions, the contract contains an express warranty, which states:

> "Flow warrants the Equipment to be free from defects in workmanship and materials for the period specified on the quotation, except that spare parts shall be warranted for a one-year period. This limited warranty does not cover normal wear and tear, consumable items including, but not limited to, seals, mixing tubes, filters, orifices, low and high-pressure cylinders, or part failures caused by (i) accident, (ii) abuse, or (iii) failure to maintain the Equipment in accordance with Flow's technical specifications. Flow's liability is limited to repair or replacement of the Equipment and the determination regarding which of these is appropriate shall be at Flow's sole discretion. The warranty is conditioned upon (i) Flow being notified in writing by Buyer within one month after the discovery of defects…"

On a separate page in paragraph 9, the contract limits the damages available to Ruiz Fajardo:

> **9. LIMITATION OF DAMAGES**
> FLOW SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OF USE, LOSS OF PRODUCTION, DAMAGES TO OTHER EQUIPMENT, COST OF CAPITAL OR INTEREST. FLOW'S LIABILITY IS LIMITED TO REPAIR OR REPLACEMENT OF THE EQUIPMENT AND THE DETERMINATION REGARDING WHICH OF THESE IS APPROPRIATE SHALL BE AT FLOW'S SOLE DISCRETION.

Regarding the duration of the limited warranty agreed to in paragraph one of the Terms and Conditions, the contract states on page nineteen that the "warranty term is two (2) years from system shipment or 4000 hours, whichever comes first." However, in the following paragraph, the contract makes plain that "[i]n order to qualify for this warranty period, at least one person within the customer's organization assigned to maintain the equipment must attend a free system maintenance training course prior to or within three (3) months of system installation. If training is not elected, a

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 2
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

one (1) year warranty will apply." The contract explains this system maintenance training course, stating "Flow will provide …. [f]our (4) days of system training for up to two people in Jeffersonville, Indiana (Louisville) or Kent, Washington (Seattle). The training will include operation and programming training on the X-Y machine and maintenance training for the high-pressure system…. Flow recommends that training occur prior to installation as it will be required for operating the system."[1]

After having these terms translated and reviewing them, Ruiz Fajardo paid for the machine, which was shipped on May 1, 2013. The machine was installed by Flow technicians at Ruiz Fajardo's facility in fall 2013. Despite Flow's recommendations, Ruiz Fajardo never sent a representative to attend the four-day maintenance training course at one of Flow's facilities. Other than minor electrical and plumbing improvements, Ruiz Fajardo did little to prepare for the arrival of the machine, which was the most complex machine it had ever acquired.

Since the machine was installed, Ruiz Fajardo claims it experienced three main issues with the machine: (1) difficulty starting up the machine, (2) the inability of the machine to return to its "home" position upon startup, and (3) the inability of the machine's software to accurately calculate cutting times. Each time Ruiz Fajardo complained about these alleged issues with the machine, Flow was quick to respond. Flow sent South American-based technicians to Ruiz Fajardo's Colombian facility to address Ruiz Fajardo's concerns. Specifically, Flow's technicians provided workarounds to help solve Ruiz Fajardo's complaints that the machine would not start properly and that its software was not producing accurate cutting times.

Additionally, despite the one-year warranty ending on May 1, 2014, Flow continued to provide service to Ruiz Fajardo until March 2015 when Ruiz Fajardo refused to pay its outstanding invoices. Despite Flow stopping service in March 2015, Ruiz Fajardo continued to use the machine until early 2016, when Ruiz Fajardo asserts it could no longer operate the machine.

---

[1] The contract noted that Flow would provide maintenance familiarization on the day of installation, but also noted that it was for familiarization purposes only and was *not* intended to be used as a substitute for Flow's four-day training session.

DEFENDANT FLOW INTERNATIONAL  
CORPORATION'S TRIAL BRIEF - 3  
No: 2:16-cv-01902-RAJ  

DLA Piper LLP (US)  
701 Fifth Avenue, Suite 6900  
Seattle, WA  98104-7029 | Tel: 206.839.4800

Ruiz Fajardo filed this lawsuit in December 2016. After the lawsuit was filed, Flow agreed to send technicians to Colombia to address Ruiz Fajardo's latest complaints, which they did during the spring and summer of 2017. During these site visits, Flow's technicians observed that the three main issues that formed the basis for Ruiz Fajardo's complaints—(1) start-up issues, (2) homing issues, and (3) problems estimating cutting times—were due to Ruiz Fajardo's lack of training and improper operation and maintenance of the machine. Specifically, the start-up issues were caused by Ruiz Fajardo's failure to follow the proper start-up procedure outlined in the machine's manual, which was discussed at length in the four-day training that Ruiz Fajardo chose not to attend. Ruiz Fajardo experienced start-up issues because, upon startup, Ruiz Fajardo employees did not wait for the machine software to load completely before attempting to use the machine. Similarly, with respect to the homing issue, Flow technicians saw that the Ruiz Fajardo employees were not following the proper shutdown procedure outlined in the manual. Again, this procedure would have been covered during the four-day training Ruiz Fajardo failed to attend.

Finally, as to the estimated-cutting-time issue, Flow technicians observed that the software associated with the machine would provide proper estimates if Ruiz Fajardo employees loaded the files onto the module attached to the machine, rather than running the estimates on a separate computer. This process was also discussed at length during the missed four-day training.

During the 2017 site visits, Flow's team also witnessed issues with how the machine had been maintained. The machine was stored in an open-air structure, exposed to the elements. Due to its storage location, the machine was covered in bird droppings and feathers. Upon inspection of the machine, the Flow team found a cloudy gauge, evidence of algae, and lack of lubrication, signaling a failure to properly maintain the machine in accordance with the guidelines discussed in the manual and reiterated at the four-day training.

After Flow's 2017 service visits, the machine was once again returned to normal operation and Ruiz Fajardo continues to this day to use the machine as part of its everyday business.

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 4
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

### III. DISCUSSION OF CLAIMS

**A. The Express Warranty Was Not Breached**

An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain … that the goods shall conform to the affirmation or promise." RCW 62A.2-313(1)(a). The buyer has the burden of establishing a breach of the express warranty. RCW 62A.2-607(4). Given the Court's ruling that the only warranty at issue is the limited express warranty contained in the parties' contract, Ruiz Fajardo has the burden of proving that Flow breached the terms of that warranty, which specifically states: "Flow warrants the Equipment to be free from defects in workmanship and materials for the period specified on the quotation, except that spare parts shall be warranted for a one-year period." Per this Court's December 27, 2018 order, the express warranty was limited to one year from shipment.[2] Therefore, any alleged "defects in workmanship and materials" that arose after May 1, 2014 are outside the scope of the warranty period and irrelevant to Plaintiff's breach of warranty claim. *See Long v. Hewlett-Packard Co.*, 316 F. App'x 585, 586 (9th Cir. 2009) (finding that defects that manifest themselves outside the applicable express warranty time period are not covered by the warranty).

Because the limited express warranty covers only defects in workmanship and materials, it does not cover every potential issue that could have arisen with the machine. A defect in workmanship is a defect in a way some part of the machine is constructed. *Lombard Corp. v. Quality Aluminum Prod. Co.*, 261 F.2d 336, 338 (6th Cir. 1958). A defect in material is a defect in quality. *Id.* An express warranty covering workmanship and materials—such as the one here—*does not* extend to design defects. *See, e.g.*, *Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("[D]efects in materials and workmanship refer to departures from a product's intended design while

---

[2] On December 27, 2018, the Court granted Flow's motion for partial summary judgment on two issues that related to interpretation of the purchase contract's terms. *See* Dkt. No. 42. First, the Court held that Plaintiff is limited to claiming breach of the limited express warranty contained in the parties' contract. *Id.* at 10:1–12:4. Second, the Court held that because Ruiz Fajardo did not attend the four-day training, the express warranty in the Contract only extended one year from the date the machine shipped. *Id.* at 12:5–7 ("[T]he Court also agrees with Defendant that by its terms, the warranty contained in the Contract extends only one year from the date in which the Machine was shipped …").

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 5
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

design defects refer to the inadequacy of the design itself."). In contrast to a defect in workmanship or materials, "a design defect exists when a product is built in accordance with its intended specifications, but the design itself is inherently defective." *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 985 (N.D. Cal. 2014).

In addition to proving a breach, the UCC requires the buyer to notify the seller of the breach within a reasonable time. RCW 62A.2-607. The reasonable time by which a buyer must provide notice of a breach can be fixed by agreement. *See Jarstad v. Tacoma Outdoor Recreation, Inc.*, 10 Wn. App. 551, 558, 519 P.2d 278 (1974). Under the terms of the express warranty, Ruiz Fajardo was required to notify Flow of any defects in writing within one month of discovery, thereby fixing the reasonable notice requirement under RCW 62A.2-607 to a one-month period.

Here, Ruiz Fajardo cannot meet its burden of proving that a defect in workmanship or materials existed at any point during the warranty's one-year period (or ever). When Flow's technicians inspected the machine in 2017, the machine worked in accordance with the manual, despite it sitting dormant and exposed to the elements for over a year. The issues Ruiz Fajardo identified stemmed directly from Ruiz Fajardo's own actions—or lack thereof. If Ruiz Fajardo had followed the proper procedures for start-up and shut-down of the machine, there would not have been issues starting the machine, the homing issues would have been eliminated, and the machine would have had a full range of cutting movement. Additionally, if Ruiz Fajardo had sent its employees to the recommended training, they would have learned these procedures and they would have learned that precise cutting times could be calculated by loading the files onto the actual system, rather than using the external computer software.

Ruiz Fajardo's inability to properly maintain the machine also contributed to the issues about which Ruiz Fajardo now complains. This is not surprising, considering maintenance was another topic discussed at length during the four-day training Ruiz Fajardo did not attend. Ruiz Fajardo failed to follow Flow's recommendation for water testing and allowed algae to grow in the machine. Ruiz Fajardo kept the machine outside in an open-air structure, exposed to animals and elements. And,

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 6
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

despite Flow's recommendation that Ruiz Fajardo keep certain spare parts on hand to eliminate production delays, Ruiz Fajardo did not keep an inventory of spare parts on site.

Because the alleged issues Ruiz Fajardo claims it experienced with the machine were caused by user error and failure to understand the machine's capabilities, it will be unable to prove Flow breached the express one-year warranty covering workmanship or materials.

## B. Flow's Limited Remedy of Repair or Replacement Did Not Fail its Essential Purpose

Even if Ruiz Fajardo successfully establishes that Flow breached the limited express warranty, the contract contained a separate limitation of damages clause, limiting Ruiz Fajardo's recovery to repair or replacement of the machine. To recover outside this limited remedy, Ruiz Fajardo must prove that the limited remedy failed its essential purpose. Courts have interpreted a limitation of remedies clause to fail its essential purpose if the repair effort was inefficient, negligent, or tardy. *Fiorito Bros. v. Fruehauf Corp.*, 747 F.2d. 130 (9th Cir. 1984). A seller is only required to offer the limited remedy—that is, repair or replacement—during the duration of the specified warranty. *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363 (D. Mass. 1991).[3] Here, that is one year (i.e., until May 1, 2014).

Ruiz Fajardo will not be able to establish that Flow's limitation on remedies failed its essential purpose. Throughout the one-year warranty period (and beyond), Flow consistently responded to and addressed Ruiz Fajardo's concerns. In contrast to *Fiorito Bros. v. Fruehauf Corp.*, a case Plaintiff often cites in which the seller completely refused to honor its duty of repair or replacement, Flow never arbitrarily declined to service the machine. Flow promptly responded to each of Ruiz Fajardo's

---

[3] The applicable express warranty in *Boston Helicopter Charter, Inc.* provided that a helicopter was to be free from defects in material and workmanship for a limited duration of time. *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 367 (D. Mass. 1991). The warranty also contained a limited remedy, which was limited to repair or replacement. *Id.* After the lapse of the warranty's time limitation, a defective part caused the helicopter to crash and the buyer brought an action against the seller for breach of an express warranty under Massachusetts's UCC. *Id.* at 368. The buyer argued that the limitation of remedies failed its essential purpose, and thus under section 2-719(2), the buyer was entitled to monetary damages. *Id.* at 369. The court held that—absent any findings that the durational limitation was unconscionable—section 2-719(2) was "inapplicable once the warranty has expired." *Id.* at 374 . Throughout the course of this litigation, Ruiz Fajardo has never asserted the durational limitation was unconscionable. Thus, Ruiz Fajardo can only show the limited remedy failed its essential purpose if it can prove Flow's service was inefficient, negligent, or tardy between May 1, 2013 and May 1, 2014.

DEFENDANT FLOW INTERNATIONAL  
CORPORATION'S TRIAL BRIEF - 7  
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)  
701 Fifth Avenue, Suite 6900  
Seattle, WA  98104-7029 | Tel: 206.839.4800

concerns by sending service technicians to provide Ruiz Fajardo with onsite assistance, and—despite the warranty ending in May of 2014—Flow continued to provide this on-site assistance until March 2015.  These technicians provided workarounds that allowed Ruiz Fajardo to start the machine and run accurate cutting time estimates.  Not only did Flow promptly respond to service requests well after the warranty expired, and provide viable workarounds, Flow also sent technicians to Colombia in 2017 to return the machine to operation at no cost to Ruiz Fajardo.  Thus, Plaintiff is bound by the warranty's limitation of remedies, and is precluded from seeking damages at trial, including consequential (lost profits) damages.

**C.     Ruiz Fajardo Cannot Establish Damages**

A buyer bears the burden of establishing its alleged damages.  *Lewis River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn. 2d 712, 717, 845 P.2d 987 (1993).  Here, even if Plaintiff prevails on the two above points, it will be unable to establish it suffered damages in the form of lost profits because it relies only on evidence that is self-serving and speculative.

Under Washington's version of the UCC, when a buyer prevails on a breach of warranty claim, the buyer may recover the monetary value equaling the difference at the time and place of acceptance between the value of the goods accepted and the value the goods would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.  RCW 62A.2-714.  Repair costs are an appropriate alternative measure of damages for breach of warranty.  *Miller v. Badgley*, 51 Wn. App. 285, 288, 753 P.2d 530 (1988).

In a proper case, any incidental and consequential damages may also be recovered.[4]  RCW 62A.2-715.  Consequential damages may include lost profits.  Ruiz Fajardo has the burden of proving it suffered incidental or consequential damages and must do so by more than pure speculation and conjecture.  *O'Brien v. Larson*, 11 Wn. App. 52, 54, 521 P.2d 228 (1974).  Under governing Washington law, if a buyer is attempting to collect consequential damages in the form of lost profits

---

[4] Ruiz Fajardo has claimed it is seeking incidental damages throughout the course of this litigation, including in its proposed jury instructions.  Flow, however, does not believe Ruiz Fajardo can put forth evidence that it suffered incidental damages.

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 8
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

for a new line of business, the buyer must establish a reasonable estimation of damages based on an analysis of market conditions and profits of identical or similar businesses in the vicinity operating under substantially the same conditions. *See, e.g., Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 17, 390 P.2d 677 (1964). Similarly, in order to meet its burden of proving loss of business reputation and goodwill, Ruiz Fajardo must provide evidence of some measurable loss. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 723, 315 P.3d 1143 (2013). Speculation and conjecture will not suffice. Unquantifiable testimony that a business's reputation has been diminished without computing an amount does not provide sufficient support for recovery. *Id.* Ruiz Fajardo will not be able to meet this standard because the evidence it relies on is unsubstantiated and self-serving.

### D. Ruiz Fajardo Failed to Mitigate its Damages

Even if Ruiz Fajardo can prove that it is legally and factually entitled to monetary damages—which Flow contends it cannot—Ruiz Fajardo's recovery must be reduced because Ruiz Fajardo failed to mitigate any damages it allegedly suffered. Under Washington law, the seller has the burden of proving a buyer did not take reasonable steps to mitigate its damages. *Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn. 2d 413, 434, 886 P.2d 172 (1994). Stated in another way, Flow has the burden of proving there were reasonable, alternative courses of action available to Ruiz Fajardo to mitigate the alleged damages it suffered. At trial, Flow will show that Ruiz Fajardo failed to utilize alternative available methods, which, if employed, would have lessened the amount of damages (if any) caused by Ruiz Fajardo's failure to operate the machine.

### E. Evidentiary Issues

Flow has objected to the authenticity and admissibility of many of Ruiz Fajardo's exhibits. Pursuant to the Court's instruction at the final pretrial conference, Flow does not presently seek through this trial brief a ruling on the authenticity and admissibility of these exhibits, but will instead raise such objections at the time Ruiz Fajardo seeks to admit such exhibits (if it does). Flow notes only for the Court's benefit before trial that its objections to the admission of such exhibits are based on three primary grounds—(1) relevance, (2) hearsay, and (3) authenticity. First, many of Ruiz

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 9
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

Fajardo's exhibits are not relevant because they concern alleged issues with the machine that arose outside the express one-year warranty period.  Second, many of Ruiz Fajardo's exhibits contain hearsay and are being offered for the truth of the matters asserted therein.  Third, many of Ruiz Fajardo's exhibits should not be admitted because their authenticity has not been established as required by Federal Rule of Evidence 901.

## IV.   CONCLUSION

Based on the foregoing reasons, Ruiz Fajardo will be unable to establish liability or prove it is entitled to damages at the forthcoming trial.

Respectfully submitted this 22nd day of January, 2019.

DLA PIPER LLP (US)

*s/ Andrew R. Escobar*
Andrew R. Escobar, WSBA No. 42793
Jeffrey DeGroot, WSBA No. 46839
Alexandria A. Walker, WSBA No. 53786
701 Fifth Avenue, Suite 6900
Seattle, Washington  98104-7029
Tel:    206.839.4800
Fax:    206.839.4801
E-mail:  andrew.escobar@dlapiper.com
E-mail:  jeffrey.degroot@dlapiper.com
E-mail:  alexandria.walker@dlapiper.com

Attorneys for defendant
Flow International Corporation

DEFENDANT FLOW INTERNATIONAL
CORPORATION'S TRIAL BRIEF - 10
No: 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the parties.

Dated this 22nd day of January, 2019.

*s/ Andrew R. Escobar*
Andrew R. Escobar, WSBA No. 42793

WEST\285099452.4