THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUIZ FAJARDO INGENIEROS ASOCIADOS S.A.S., a foreign corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FLOW INTERNATIONAL CORPORATION, a Delaware corporation,<br><br>　　　　　Defendant. | No. 2:16-cv-01902-RAJ<br><br>**DEFENDANT FLOW INTERNATIONAL CORPORATION'S (1) MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW; (2) IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL; AND (3) MOTION FOR EXTENSION OF THE RULE 62 STAY OF ENFORCEMENT PENDING RESOLUTION OF THESE RULE 50(B) AND 59 MOTIONS**<br><br>Noted for consideration on March 22, 2019 |

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - i
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

I. INTRODUCTION ........................................................................................................................5

II. BACKGROUND.........................................................................................................................6

III. ARGUMENT .............................................................................................................................7

    A.    This Court Must Enter Judgment in Flow's Favor Under Rule 50(b) ............................7

    B.    Flow Is Entitled to A New Trial Under Rule 59..............................................................11

    C.    Rule 62's Thirty-Day Stay Should Extend Until the Court Renders Its Opinion on the Pending Post-Trial Motions .........................................................................................16

IV. CONCLUSION........................................................................................................................16

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - ii
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bruce Martin Const., Inc. v. CTB, Inc.*,
  735 F.3d 750 (8th Cir. 2013) ...................................................................................................14

*Cleveland v. S. Pac. Co.*,
  436 F.2d 77 (9th Cir. 1970) .....................................................................................................14

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
  762 F.3d 829 (9th Cir. 2014) ...................................................................................................11

*Hughes v. Panasonic Consumer Elecs. Co.*,
  CIV.A. 10-846 SDW, 2011 WL 2976839 (D.N.J. July 21, 2011)............................................9

*Landes Const. Co., Inc. v. Royal Bank of Canada*,
  833 F.2d 1365 (9th Cir. 1987) .................................................................................................11

*Lombard Corp. v. Quality Aluminum Prod. Co.*,
  261 F.2d 336 (6th Cir. 1958) .....................................................................................................8

*Mariscal v. Graco, Inc.*,
  52 F. Supp. 3d 973 (N.D. Cal. 2014) ......................................................................................15

*McCabe v. Am. Honda Motor Co.*,
  100 Cal. App. 4th 1111 (2002) .................................................................................................8

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ...................................................................................................11

*Ostad v. Or. Health Sci. Univ.*,
  327 F.3d 876 (9th Cir.2003) .....................................................................................................7

*Servs. Employees Int'l Union v. Nat'l Union of Healthcare Workers*,
  718 F.3d 1036 (9th Cir. 2013) .................................................................................................14

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
  251 F.3d 814 (9th Cir. 2001) ...................................................................................................11

**Statutes**

RCW 62A.2-714 ..................................................................................................................8, 11, 12

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - iii
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

Fed. R. Civ. P. 50..................................................................................................................3, 7, 8

Fed. R. Civ. P. 59..................................................................................................................6, 7, 10

Fed. R. Civ. P. 62...................................................................................................................15, 16

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - iv
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

Defendant Flow International Corporation ("Flow") hereby brings this Motion for Renewed Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b), or, in the alternative, Motion for a New Trial pursuant to Rule 59.

## I.   INTRODUCTION

Following a jury trial for damages resulting from a breach of an express warranty under Washington's UCC, the jury awarded $437,830 in damages—the entire cost of the at-issue machine—to Plaintiff Ruiz Fajardo Ingenieros Asociados S.A.S. ("Ruiz Fajardo" or "Plaintiff"), indicating a finding that the machine had no value. This verdict, however, is not supported by the weight of the evidence presented by both parties at trial. Accordingly, Flow brings the following combined Rule 50(b) and Rule 59 motion on three grounds.

*First*, Flow requests that this Court render judgment in its favor because no reasonable jury would have a legally sufficient basis to find for Ruiz Fajardo on the lone breach of warranty claim that was tried before the jury. The software issues Ruiz Fajardo alleged it suffered are not covered under the applicable express warranty at issue. Specifically, the software defect—for which Ruiz Fajardo claims caused the cut-time estimation problems—is a design defect, not a defect in workmanship and materials. Because the express warranty at issue only covers defects in workmanship and materials, any defect in the design of the software is not covered under the warranty.

*Second*, this Court must grant a new trial because the clear weight of the evidence does not support the jury's verdict that the machine was worthless. It was clear that the damages awarded to Ruiz Fajardo did not include lost profits. Rather, the jury's verdict was based on the damages allowed under Washington's UCC—computed by taking the value of the machine as warranted less the value of the goods actually accepted. By awarding Ruiz Fajardo the entire purchase price of the machine, the jury rendered the machine worthless. This is not supported by the weight of the evidence presented at trial. There is substantial evidence, presented by both parties, that the

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 1
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

machine worked at the time it was delivered. Ruiz Fajardo was able to use the machine to perform cuts, make money, and fulfill customer orders. The weight of the evidence simply does not support the notion the machine was worthless to Ruiz Fajardo.

*Third,* this Court must grant a new trial because the failure to include the definition of a design defect in the jury instructions misled the jury, evidenced by the fact that the jury conflated the software issues—which are design defects—as defects in workmanship and materials, which are the **only** types of defects covered under the at-issue limited warranty. The only basis for the jury to find the machine completely worthless was testimony from Ruiz Fajardo's liability expert who testified that the cut-time estimation was the biggest problem. Problems with cut-time estimation, however, are software problems that are design defects not covered by a warranty for workmanship and materials. The jury instructions should have included the definition of design defect to prevent this confusion.

Finally, Flow requests that this Court extend Rule 62's automatic thirty-day stay on judgment enforcement until this Court has ruled on all pending post-trial motions before the Court.

## II.   BACKGROUND

The procedural background of this case is well known to the Court. In summary, Ruiz Fajardo brought this action against Flow, asserting causes of action under Washington's UCC for breach of contract and breach of warranty stemming from the purchase of a waterjet cutting machine. Following a two-week jury trial, the jury found that Flow breached the applicable warranty and awarded Ruiz Fajardo $437,830 in damages.

Prior to trial, the parties submitted a joint statement of disputed jury instructions. Dkt. No. 50. Flow proposed that the instruction defining defects in workmanship and materials include the following language: "A defect in workmanship or material does not include a design defect. A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Id*. at 24. This Court did not include this language in its

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 2
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

final instruction; the instruction read to the jury simply stated: "The express warranty in the sales contract is one for a defect in workmanship and materials. A defect in workmanship is a defect in the way some part of the machine is constructed. A defect in material is a defect in quality." Dkt. 67 at 18.

The jury trial began on January 28, 2019. On February 1, 2019, immediately after the close of Plaintiff's case, Flow brought an oral Rule 50(a) Motion for Judgment as a Matter of Law on two bases: (1) Ruiz Fajardo had no legally sufficient basis to prove that the software issues it allegedly suffered were covered under the express warranty at issue in this case; and (2) Ruiz Fajardo had no legally sufficient basis to recover lost profits for a new business line. Escobar Decl., Ex. 5 at 96:5–107:21 (February 1, 2019). After listening to both parties' oral argument, this Court denied Flow's motion "at this time." *Id*. at 107:20–21. Flow's Renewed Motion for Judgment as a Matter of Law raises the same issues as its Rule 50(a) Motion.

On February 7, 2019, the jury entered a verdict in favor of Ruiz Fajardo, awarding Ruiz Fajardo $437,830 in damages—the exact purchase price of the machine. Dkt. No. 74. Immediately before the jury rendered its verdict, the jury asked the court: "In lieu of lost profits may we award compensation in form of the amount of contract price of a Mach 4 $437,830?" Dkt. No. 72. It was clear by this question that the jury did not award Ruiz Fajardo lost profits as part of its damages award.

### III.   ARGUMENT

**A.   This Court Must Enter Judgment in Flow's Favor Under Rule 50(b)**

The Court must grant a renewed motion for judgment as a matter of law if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue…" Fed. R. Civ. P. 50(a). Granting a motion for judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and the conclusion is contrary to that reached by the jury." *Ostad v. Or. Health Sci. Univ*., 327 F.3d 876, 881 (9th Cir.2003). In this case, there

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 3
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

is no legally sufficient basis for a reasonable jury to find that the express warranty at issue in the case covered design (i.e. software) defects, which were the only defects Plaintiff presented to the jury as the basis for its breach of warranty claim.[1]  Throughout trial, Ruiz Fajardo consistently stated that the machine was defective because of problems stemming specifically from the software.  Yet, software issues were not covered under the parties' express contractual warranty because software issues are not defects in materials and workmanship—as provided by the warranty—but instead design defects.

A warranty against defects in materials and workmanship provides that the machine will be free of defects in both the quality of materials used to construct it and the way the it is constructed.  *Lombard Corp. v. Quality Aluminum Prod. Co*., 261 F.2d 336, 338 (6th Cir. 1958) ("A defect in material is a defect in quality … A defect in workmanship is a defect in the way some part of the machine is constructed …. Design, on the contrary, involves the overall plan of construction and operation.").  The Ninth Circuit relied on *Lombard's* analysis of this language in *McDonnell Douglas Corp. v. Thiokol Corp.,* holding that in order for the plaintiff to prove a defect in labor, material, or manufacture, the plaintiff had to prove that the motors at issue "suffered from a flaw in the quality of the material used in their construction."  124 F.3d 1173, 1177 (9th Cir. 1997).

To the contrary, a design defect occurs when a product is built in accordance with its intended specifications, but the design itself is inherently defective.  *McCabe v. Am. Honda Motor Co*., 100 Cal. App. 4th 1111, 1120 (2002).  In *Bros. v. Hewlett-Packard Co*., the plaintiffs purchased laptops that included a limited one-year warranty identical to the warranty at issue in this case.  No. C-06-02254, 2007 WL 485979 at * 2 (specifically, the warranty provided that "the

---

[1] During trial, Flow also moved under Rule 50(a) on the basis that Ruiz Fajardo did not satisfy the Washington Supreme Court's standard for proving lost profits for a new line of business.  Escobar Decl., Ex. 5 at 96:5–107:21 (Feb. 1, 2019).  Flow renews its Rule 50(a) motion on this point to preserve the issue for appeal.  However, as explained in Flow's Opposition to Ruiz Fajardo's Motion for Attorneys' Fees and Costs, Dkt. No. 93, Flow recognizes that the jury did not award Ruiz Fajardo lost profits.

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 4
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

HP product and all internal components of the product that you have purchased or leased from HP are free from defects in materials and workmanship under normal use during the limited warranty period …").  The plaintiffs claimed the computers were defective due to an issue with the motherboard.  *Id*.  The court held that the defendant did not breach the limited warranty at issue because the warranty did not cover design defects.  "Based on its express terms, the Limited Warranty essentially promises that HP would not use materials that are defective or substandard workmanship in repairing or replacing parts under warranty." *Id*.  An issue in the way software is programmed is a design defect, not a defect in workmanship and materials.  *See Hughes v. Panasonic Consumer Elecs. Co.,* CIV.A. 10-846 SDW, 2011 WL 2976839, at *19 (D.N.J. July 21, 2011) ("A defect in the programming of the software which controlled the voltage adjustments is not akin to a defect in materials or substandard workmanship used by Panasonic in replacing or repairing parts under warranty.")

Throughout trial, Ruiz Fajardo continually repeated that the software was the main issue with the machine:

- "After telling them in many different ways that the problem with the machine was the software." —Tulio Ruiz.  Escobar Decl., Ex. 1 at 150:15–21 (Jan. 28, 2019).
- "The machine stopped working because of the software that was sold to us.  That's the reason why the machine - - the machine never worked." —Tulio Ruiz.  Escobar Decl., Ex. 2 at 128:16–18 (Jan. 29, 2019).
- In response to the question of whether the software issues were the only problem that Ruiz Fajardo had with the machine: "The main problem was always the software."  —Tulio Ruiz.  Escobar Decl., Ex. 4 at  69:2–4  (Jan. 31, 2019).
- "The majority of the problems have always been due to the software.  I think the mechanical parts that got damaged, this happened because of the bad use of them, because of software."  —Tulio Ruiz.  Escobar Decl., Ex. 3 at 70:5–8 (Jan. 30, 2019).

Ruiz Fajardo presented evidence that the issues with the software directly related to the issues that Ruiz Fajardo encountered starting up the machine. Ruiz Fajardo's own expert clarified that Ruiz Fajardo's claim was specifically related to how the software was programmed, *not* its quality:

> Q: Now, in your view, was that an issue with the design of the software, or was it the particular installation of the designed software on Ruiz Fajardo's machine?
>
> A: It my estimation, that was the inability of the software to do the job it was advertised to do.
>
> Q: Correct. But was the software issue one where the code maybe had an error, so every customer that had that software you [sic] would have the issue, or was it just particular to just Ruiz Fajardo's machine?
>
> A:   I would say it was a deficiency of the software.
>
> Q: So the way the software - -
>
> A: Generally, to accurately predict cuts at 87,000 psi.
>
> Q: **It's the way the software was designed or written, correct?**
>
> A: **Yes, sir.**  Escobar Decl., Ex. 4 at 5:1–14 (Jan. 31, 2019).

Additionally, Claudia Mette of Flow testified that she knew of another customer experiencing software issues. Escobar Decl., Ex. 4 at 45:17–24 (Jan. 31, 2019) ("I can't tell you precisely who, but I remember that there were some other customers that had a similar problem with cutting times."). Throughout trial, Ruiz Fajardo put forth a theory that the software problems were due to a problem in the way the software was written. The issues with the software were not a problem in the quality of materials used (i.e. defect in materials) or the construction of the machine (i.e. defect in workmanship). They were design defects, which are not covered under the express language of the warranty. As such, there was no legally sufficient evidentiary basis for the jury to find that Flow breached the express warranty.

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 6
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

**B.   Flow Is Entitled to A New Trial Under Rule 59**

A party bringing a Rule 50(b) motion may also include a joint request for a new trial under Rule 59. Federal Rule of Civil Procedure Rule 59(a) provides that: "The court may, on motion, grant a new trial on all or some of the issues—and to any party…after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court…" Fed. R. Civ. P. 59(a). Under the abuse of discretion standard, even if substantial evidence supports the jury's verdict, a trial court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) *quoting United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). A court may also grant a new trial because of juror confusion caused by misleading jury instructions. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd,* 762 F.3d 829, 847 (9th Cir. 2014) (affirming the trial court's grant of a new trial due to juror confusion likely due to jury instructions).

When considering a Rule 59 motion, the district court has "the duty ... to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007), *quoting Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). Finally, when ruling on a dual Rule 50(b) and Rule 59 motion—such as this one—the court may either order a new trial or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

   *1.   The Clear Weight of the Evidence Does Not Support the Jury's Verdict*

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 7
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

The clear weight of the evidence in this case does not support the jury's verdict and award of $437,830 to Ruiz Fajardo because the clear weight of the evidence established that the machine was **not** worthless.  The jury's verdict did not include a lost profit award, evidenced by the fact that it asked the Court the following question immediately before it rendered its verdict: "In lieu of lost profits may we award compensation in form of the amount of contract price of a Mach 4 $437,830?"  Immediately thereafter, the jury awarded Plaintiff the exact purchase price of the machine.  Under Washington's UCC, as explained to the jury in Jury Instruction No. 21, the measure of damages for a breach of warranty claim is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted…" RCW 62A.2-714.  The jury's award of $437,830 means that the jury found that Ruiz Fajardo's machine was valued at zero when accepted.

The clear weight of the evidence provided at trial (by both Plaintiff and Defendants) directly contradicts the notion the machine was completely worthless.  Throughout trial, Ruiz Fajardo admitted that the machine was in operating condition for the majority of time it was at Ruiz Fajardo and that it continued to operate through the present.  The following testimony and admitted exhibits are but some of the extensive evidence that illustrates this point:

- "We have been able to carry out most of the jobs [since 2017]." — Tulio Ruiz. Escobar Decl., Ex. 3 at 74:25–75:3 (Jan. 30, 2019).

- "The problems were resolved in 2017…so far it has been working well." — Tulio Ruiz Escobar Decl., Ex. 2 at 111:18–20 (Jan. 29, 2019).

- Ex. 32: Interrogatory responses where Ruiz Fajardo states that it was able to make 2D and 3D cuts, as well as perform cuts for customers. Escobar Decl., Ex. 8 at p. 7–8.

- Ex. 39: Service Reports, signed by Ruiz Fajardo, from October 2013, July 2014, October 2014, January 2015, and March 2015 which state that the machine was rendered in normal operating conditions after Flow's service technicians visited Ruiz Fajardo. Escobar Decl., Ex. 9 at p. 2, 10, 14–15, 19, & 21.

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 8
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

- Cesar Cortes' testimony regarding his role operating the machine. Escobar Decl., Ex. 4 at 68:5–69:9 (Jan. 31, 2019).

- Javier Gomez Pena's testimony regarding his continuous work with the machine. Escobar Decl., Ex. 5 at 22:12–23:3; 25:4–13 (Feb. 1, 2019)

- "The machine cut, and it was working well for a while." — Claudia Gomez. Escobar Decl., Ex. 5 at 45:20 (Feb. 1, 2019)

- Testimony from Claudia Gomez that Ruiz Fajardo was able to complete jobs for customers. Escobar Decl., Ex. 5 at 47:18–22 (Feb. 1, 2019)

- When calculating lost profits, the expert who testified on Ruiz Fajardo's behalf, Mr. Solis, factored in profits that Ruiz Fajardo generated from the machine, thereby admitting the machine was profitable. Escobar Decl., Ex. 5 at 62:13–63:1 (Feb. 1, 2019)

- Charlie Wakefield's testimony confirming the operability of the machine when he visited Ruiz Fajardo. Escobar Decl., Ex. 6 at 20:10–21:2; 30:22–46:9 (Feb. 5, 2019)

- Charlie Wakefield's testimony confirming the machine was able to cut in 3D when he visited the plant. Escobar Decl., Ex. 6 at 117:6–10 (Feb. 5, 2019)

- Richard Fincher's testimony that the product did meet specifications. Escobar Decl., Ex. 7 at 35:8–14 (Feb. 6, 2019).

In order to support the verdict granting damages in the form of the entire purchase price of the machine, the jury could only have concluded that the machine Ruiz Fajardo received never provided Ruiz Fajardo *any* value—i.e. that Ruiz Fajardo could not use it to make any cuts or complete any jobs for customers. This is clearly contrary to what the jury and this Court heard throughout the trial. Even when Mr. Tischler testified the machine was "borderline worthless" because of the cut-time estimation software issue, he later expanded on his opinion and admitted that issue was fixed after the software was upgraded. Escobar Decl., Ex. 3 at 129:23–24 (Jan. 30, 2019). Ruiz Fajardo also focused on the missing laser height sensor to support its argument that the machine could not cut in 3D, yet Flow's top engineer testified that the height sensor was not required for 3D cutting, and Ruiz Fajardo admitted in an interrogatory response (Escobar Decl., Ex. 9 at 7–8) that the machine cut in 2D and 3D. Escobar Decl., Ex. 6 at 75:21–76:6 (Feb. 5,

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 9
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

2019). Even Ruiz Fajardo's own counsel admitted the machine was not worthless in his closing statement: "But we're not saying that we're entitled to the whole 437,000, because we have got a machine that's very close to where it needs to be." Escobar Decl., Ex. 7 at 166:20–22 (Feb. 6, 2019). Based on the evidence (and arguments) presented at trial, no reasonable jury could have found that the machine was absolutely worthless. The jury's verdict was therefore against the clear weight of the evidence and a new trial should be granted under Rule 59.

### 2. It Was Error for the Court To Exclude the Definition of A Design Defect From the Jury Instruction Regarding Defects in Workmanship and Materials

A Court may also grant a new trial under Rule 59 on the basis that the jury instructions caused juror confusion. *See e.g., Cleveland v. S. Pac. Co.*, 436 F.2d 77, 80–81 (9th Cir. 1970) (affirming the district court's grant of a new trial partly because the district court had not properly instructed the jury on the definition of a word included in the instructions). "[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Servs. Employees Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036, 1047 (9th Cir. 2013) (quotation omitted). Flow additionally brings its Rule 59 Motion on the grounds that Jury Instruction No. 16 was incomplete and caused prejudicial error resulting in the jury being misled and/or confused into awarding a verdict based on types of defects not covered under the warranty.[2]

When the Court gave the instruction on the meaning of a defect in workmanship and materials, the Court declined to include Flow's proposed instruction regarding the definition of a design defect. *See* Dkt. No. 67 at 18; Escobar Decl., Ex. 6 at 158:23–159:25 (Feb. 5, 2019). Flow requested the Court include the definition of a design defect in this instruction so the jury could

---

[2] Additionally, Flow notes that it also objected to the Court's failure to include language in Jury Instruction No. 21 on the test for lost profits under Washington's new business rule. To preserve this issue for appeal, Flow cites it as an additional basis for its Rule 59 Motion. Flow acknowledges, however, that the jury did not award Ruiz Fajardo lost profits.

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 10
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

1  clearly understand the issues it should consider when it determined whether or not Flow breached
2  the express warranty, which warranted "the Equipment to be free from defects in workmanship
3  and materials…" A warranty for workmanship and materials does not cover design defects. *See,*
4  *e.g., Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("[D]efects in
5  materials and workmanship refer to departures from a product's intended design while design
6  defects refer to the inadequacy of the design itself."). In contrast to a defect in workmanship or
7  materials, "a design defect exists when a product is built in accordance with its intended
8  specifications, but the design itself is inherently defective." *Mariscal v. Graco, Inc.*, 52 F. Supp.
9  3d 973, 985 (N.D. Cal. 2014). Without clarification, the jury was led to believe that *any* issue that
10 arose with the machine equaled a defect in workmanship and materials. This was the outcome
11 Flow had argued would occur if the additional design defect language was not included in Jury
12 Instruction No. 16:

> Because otherwise, we think there's - - given the issues that were testified to - - a
> considerable chance for error in the jury, that they might think, oh, the software had
> a bug, that must mean it had a defect in workmanship and material. Which it does
> not. Escobar Decl., Ex. 6 at 159:16–20.

16 The jury's verdict proves that the jury was misled by this instruction, as the jury conflated
17 a design defect with a defect in workmanship and materials. As explained above, the jury's award
18 for the purchase purchase price of the machine rendered the machine completely worthless. The
19 only possible testimony to support the contention that the machine was worthless came from Mr.
20 Tischler, who stated: "The fact alone [the problems with the cut-time estimation software], from
21 a turnaround perspective, for RF, really, really was a problem for them. I'd say borderline
22 worthless." Escobar Decl., Ex 3 at 123:22–25 (Jan. 30, 2019). As described above, a software
23 issue, however, is a design defect and *not* a defect in workmanship and materials. Indeed, Mr.
24 Tischler conceded that the time estimation issue was a software design issue. Escobar Decl., Ex.
25 4 at 5:1–14 (Jan. 31, 2019). Accordingly, excluding the definition of a design defect from the

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 11
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

jury instructions misled the jury into believing, incorrectly, that the express warranty of workmanship and materials covered software problems (which are design defects and not defects in workmanship and materials) and was a prejudicial error.

**C.   Rule 62's Thirty-Day Stay Should Extend Until the Court Renders Its Opinion on the Pending Post-Trial Motions**

Under Federal Rule of Civil Procedure 62(a), the execution of a judgment and proceedings to enforce such judgment are automatically stayed for thirty days after entry of judgment. Fed. R. Civ. P. 62(a). In 2018, Rule 62 was amended, extending the automatic stay from fourteen days to thirty days. This was done to close a gap between the expiration of the automatic stay and pending dispositive motions under Rules 50 and 59. Fed. R. Civ. P. 62(a) Committee Notes on Rules—2018 Amendment. The automatic thirty-day stay in the present case will expire on March 11, 2019. As the parties are still briefing the instant motions, Flow requests that the Rule 62(a) automatic stay be extended under Rule 62(b) without bond or other security until the Court renders its opinion on all pending post-trial motions. Extending the stay of enforcement until the post-trial motions are decided will promote efficiency and not prejudice Ruiz Fajardo. The period in time is short—one to two months—and Flow, as established at trial, is a local company based in Kent for over forty years and has well-established and extensive international operations. Thus, Ruiz Fajardo's ability to collect on the $437,830 judgment, if ultimately upheld, will not be prejudiced by extending the Rule 62(a) stay for the brief period of time requested without the need for a bond.

## IV.   CONCLUSION

Based on the foregoing reasons, Flow respectfully requests this Court grant its Rule 50(b) Motion and render judgment in its favor, or, in the alternative, grant Flow's request for a new trial under Rule 59. Additionally, Flow respectfully requests this Court extend the automatic stay under Rule 62(a) until the Court has ruled on Flow's post-trial motions.

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 12
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

Respectfully submitted this 7th day of March, 2019.

                        DLA PIPER LLP (US)

                        *s/ Andrew R. Escobar*
                        Andrew R. Escobar, WSBA No. 42793
                        Jeffrey DeGroot, WSBA No. 46839
                        Alexandria A. Walker, WSBA No. 53786
                        701 Fifth Avenue, Suite 6900
                        Seattle, Washington  98104-7029
                        Tel:     206.839.4800
                        Fax:    206.839.4801
                        E-mail:  andrew.escobar@dlapiper.com
                        E-mail:  jeffrey.degroot@dlapiper.com
                        E-mail:  alexandria.walker@dlapiper.com

                        Attorneys for defendant
                        Flow International Corporation

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 13
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the parties.

Dated this 7th day of March, 2019.

*s/ Rachel Evans*
Rachel Evans, Legal Practice Specialist

EAST\165229182.2

DEFENDANT FLOW INTERNATIONAL CORPORATION'S
POST TRIAL MOTIONS - 14
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800