THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUIZ FAJARDO INGENIEROS ASOCIADOS S.A.S., a foreign corporation,<br><br>Plaintiff,<br><br>v.<br><br>FLOW INTERNATIONAL CORPORATION, a Delaware corporation,<br><br>Defendant. | No. 2:16-cv-01902-RAJ<br><br>**DEFENDANT FLOW INTERNATIONAL CORPORATION'S REPLY TO PLAINTIFF RUIZ FAJARDO'S OPPOSITION TO DEFENDANT'S (1) MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW; (2) IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL; AND (3) MOTION FOR EXTENSION OF THE RULE 62 STAY OF ENFORCEMENT PENDING RESOLUTION OF THESE RULE 50(B) AND 59 MOTIONS**<br><br>**NOTE ON MOTION CALENDAR:**<br>**March 22, 2019** |

Defendant Flow International Corporation ("Flow") is entitled to judgment as a matter of law. Ruiz Fajardo's Opposition, which ignores multiple issues, does little to dispute this. Flow is entitled to judgment as a matter of law because the express limited warranty entered into between the parties does not cover the design defects. Ruiz Fajardo's Opposition argues that because Flow relies on cases involving products liability claims, Flow's argument is unsupported. Not so. Ruiz Fajardo's position ignores the key question necessary to determine whether or not Flow breached the express warranty: What is the scope of a limited warranty covering only defects in workmanship and materials? Flow's cited case law answers this question. Ruiz Fajardo's Opposition also argues that the software problems—which are design defects—were not the main problem with the machine, but blatantly ignores the evidence it presented at trial that the *only* issue with the machine was the software.

Alternatively, Flow is entitled to a new trial because the clear weight of the evidence does not support the jury's verdict. The jury did not award Ruiz Fajardo lost profits; it awarded Ruiz Fajardo the full cost of machine, rendering the machine's value worthless. The evidence presented at trial does not support the notion the machine had no value. Ruiz Fajardo's Opposition mischaracterizes the time period relevant for determining the value of the machine and ignores testimony from its main witnesses, who were able to use and profit from the machine as soon as it was delivered.

Finally, this Court should grant Flow's request for a brief extension of the Rule 62 stay without security pending the resolution of all post-trial motions because (1) it will not prejudice any party and (2) it will be unnecessary should this Court grant Flow's post-trial motions.

## I.   ARGUMENT

### A. Judgment as a Matter of Law is Warranted

There was no legally sufficient basis for the jury to find for Ruiz Fajardo because the at-issue warranty does not cover design defects. Ruiz Fajardo contends Flow's argument is meritless because

it relies on products liability cases rather than cases addressing breach of warranty claims.[1]  Ruiz Fajardo's Opposition misses the point.  Although Flow agrees that the instant case does not involve products liability in the tort context, it does involve an express warranty.  In order to determine whether or not Flow *breached* the warranty at issue, the factfinder must first know the scope of the warranty at issue.  Therefore, case law interpreting identical warranty language, even in the context of products liability cases, provides relevant guidance.  In *Brothers v. Hewlett-Packard Co*., a breach of warranty case, the court relied on *McCabe v. Am. Honda Motor Co.* to determine what types of defects a warranty for defects in materials and workmanship encompassed.  *Brothers v. Hewlett-Packard Co*., No, C-06-02254, 2007 WL 485979 at *4.  The cases on which Flow—which specify the scope of the "materials and workmanship" warranty—are  plainly  relevant.

Ruiz Fajardo's Opposition attempts to confuse the Court by arguing that Flow breached the warranty at issue because the machine did not "meet product specifications."  This reasoning, however, misses a logical step—the basis for Ruiz Fajardo's theory that the machine did not meet "product specifications" was because of the software.  The machine was manufactured and assembled in the manner intended.  Due to the alleged software defects, Ruiz Fajardo claimed it did not function in accordance with certain specifications.  As discussed at length in Flow's Motion, Ruiz Fajardo *consistently* stated that the biggest issue it had with the machine was the software.  Ruiz Fajardo's Opposition curiously fails to reference any testimony from Tulio Ruiz himself, who constantly stated that the problem with the machine was the software.  *See* Escobar Decl., Ex. 1 at 150:15–21 (Jan. 28, 2019); Ex. 2 at 128:16-18 (Jan. 29, 2019); Ex. 3 at 70:5–8 (Jan. 30, 2019); Ex. 4. at 69:2–4 (Jan. 31, 2019).  Ruiz Fajardo's Opposition blatantly ignores these very facts.

Courts have been clear: Software defects are not covered by limited warranties for materials and workmanship because software defects inherently involve the way the software is designed.  *See*

---

[1] Ruiz Fajardo also argues that no Washington case authority supports Flow's argument, but fails to point to any Washington case authority to the contrary.  This is an issue, like many others, that has not yet been litigated in Washington.  Accordingly, Flow's reliance on out of state authority is appropriate.

| DEFENDANT FLOW INTERNATIONAL'S REPLY TO PLAINTIFF'S OPPOSITION TO FLOW'S POST-TRIAL MOTIONS - 2<br>No. 2:16-cv-01902-RAJ | DLA Piper LLP (US)<br>701 Fifth Avenue, Suite 6900<br>Seattle, WA  98104-7029 \| Tel: 206.839.4800 |
|---|---|

*Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*, No. 11-CV-488-LM, 2014 WL 1976624 at *12 (the fact software did not properly run on a particular workstation was defect in design, not one in either materials or workmanship).  Here, Ruiz Fajardo's own expert stated that the problem with the software was the way it was designed.  Escobar Decl., Ex. 4 at 5:1–14 (Jan. 31, 2019).  Design defects are not covered by a warranty for materials and workmanship.  *See Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 253 (3d Cir. 2010) (dismissing the complaint for breach of warranty because plaintiff's allegation that TV did not have as-advertised HDMI capabilities was a design defect, not not a defect in workmanship and materials); *Brothers v. Hewlett-Packard Co*., No. C-06-02254, 2007 WL 485979 at *4 ("Based on its express terms, the Limited Warranty essentially promises that HP would not use materials that are defective or substandard workmanship in repairing or replacing parts under warranty.").  Ruiz Fajardo's principal testified at trial that software defects, not the other issues Ruiz Fajardo's now lists, were the basis for Plaintiff's claim.  Software defects are design defects that fall outside the limited at-issue warranty.  There was thus no sufficient evidentiary basis for the jury to conclude that the warranty covering workmanship and materials was breached.

Finally, Ruiz Fajardo mistakenly argues that excluding design defects from a warranty for workmanship and materials would lead to absurd results.  Ruiz Fajardo's argument ignores the fact that the warranty covering workmanship and materials does not preclude sophisticated parties from entering into other warranties that cover software.  Here, both parties were sophisticated business entities that could understand the contours of the negotiated warranty.  Mr. Ruiz himself has a legal education.  If Ruiz Fajardo wanted to bargain for a warranty that extended beyond workmanship and materials, it could have done so during the negotiation process.  It did not.  The warranty does not cover software defects.

**B. The Court Should Grant Flow's Motion for a New Trial**

*1. The Clear Weight of the Evidence Does Not Support the Jury's Verdict*

As an initial matter, it is clear that the jury's verdict did not include an award for lost profits.  In addition to the fact that the jury awarded Ruiz Fajardo the ***exact*** price of the machine, Ruiz Fajardo

DEFENDANT FLOW INTERNATIONAL'S REPLY
TO PLAINTIFF'S OPPOSITION TO FLOW'S POST-
TRIAL MOTIONS - 3
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

did not present *any* evidence of damages at trial for an amount relatively close to the number the jury ultimately awarded. At trial, Ruiz Fajardo routinely asked the jury for an award in excess of one million dollars for lost profits. Escobar Decl., Ex. 7 at 166:15–17 ("We're not, you know, crazy plaintiffs or something like that. We want about 200,000 a year, which was the money we would have made off the machine.") Despite this, the jury awarded a verdict for $437,830—less than one half the total damages Ruiz Fajardo requested. The ***only*** question the jury asked the Court immediately before it rendered its unanimous verdict for the purchase price of the machine was whether it could award the purchase price of the machine instead of lost profits. Dkt. No. 72. The only reasonable conclusion is that the jury did not award lost profits to Ruiz Fajardo.

Despite the jury's clear intent to award Ruiz Fajardo the entire price of the machine, the evidence presented at trial does not support the implication that the machine is worthless. Ruiz Fajardo's Opposition argues that because the machine could not perform 3D cutting, that the machine was completely worthless. First, this is contrary to the evidence presented at trial. *See* Escobar Decl., Ex. 8 at p. 7–8 (Ruiz Fajardo's interrogatory responses stating that it was able to make 2D and 3D cuts). Second, even if the machine was never able to perform 3D cuts (a contention that Flow strongly denies), the machine was not *worthless*, as Ruiz Fajardo was still able to profit off the machine. The machine was working upon installation, as evidenced by the testimony of Claudia Gomez (stating that "the machine cut, and it was working well for a while"), and Cesar Cortes (testifying that after the machine was installed he spent about four to six hours a day working on the machine). Escobar Decl., Exs. 4 & 5.

Finally, Ruiz Fajardo's Opposition incorrectly characterizes the only relevant time period for purposes of determining the worth of the machine as the time and place of acceptance. When determining damages for breach of warranty under Washington's UCC, courts do not only look at a snapshot in time from the date of acceptance; rather they look to the worth of a machine since acceptance. For example, courts have determined that repair costs are an appropriate alternative measure of damages when determining the difference between what the machine was worth upon

DEFENDANT FLOW INTERNATIONAL'S REPLY
TO PLAINTIFF'S OPPOSITION TO FLOW'S POST-
TRIAL MOTIONS - 4
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

acceptance and what the machine would have been worth had it complied with the warranty.  *See, e.g.*, *Miller v. Badgley*, 51 Wn. App. 285, 296, 753 P.2d 530 (1988).  This method of calculating damages cannot be squared with Ruiz Fajardo's argument.  If all that is evaluated is the worth of a machine upon acceptance, there would be no need to look subsequent repair costs—all courts would do would be to look at if the machine functioned when it was accepted, and if it didn't, deem it worthless.  It is appropriate for the Court to consider the machine's worth for the entire period.  Accordingly, the substantial weight of the evidence does not support the notion the machine is worthless.

*2.   The Jury Was Improperly Instructed*

The Court should also grant Flow's motion for a new trial on the grounds that the jury was improperly instructed on the definition of a defect in materials and workmanship.  Ruiz Fajardo's contention that Flow crafted its jury instruction out of "whole cloth" is  contrary to the analysis Flow presented in its statement of disputed jury instructions.  Dkt. No. 50 at p. 25.  In addition to the cases Ruiz Fajardo refers to in Footnote nine of its Opposition, Ruiz Fajardo's Opposition fails to mention that Flow cited *Bruce Martin Const. Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013), which states that "defects in materials and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself."  This case supports Flow's proposed instruction.  As explained in the preceding section, including a sentence on what a defect in materials and workmanship *does not* include would have ensured that the jury did not conflate *any* defect to one covered by the limited warranty applicable in this case.

**C.   The Court Should Grant Flow's Motion to Extend the Rule 62 Stay**

Rule 62(b) provides in relevant part: "In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment made pursuant to Rule 59 …"  The express terms of this Rule grant the Court the discretion to determine what security measures are proper—both as to the type of security and the extent of the security.  Rule 62(b) does not mandate any particular security, or even any security *at all*.  "[A] stay pending

DEFENDANT FLOW INTERNATIONAL'S REPLY
TO PLAINTIFF'S OPPOSITION TO FLOW'S POST-
TRIAL MOTIONS - 5
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

disposition of [post-judgment motions] will generally be resolved in far less time than the lengthy process of briefing, argument and disposition which an appeal entails. Consequently, the risk of an adverse change in the status quo is less when comparing adequate security pending post-trial motions with adequate security pending appeal." *Int'l Wood Processors v. Power Dry, Inc.*, 102 F.R.D. 212, 215 (D.S.C. 1984). "[T]hose few cases addressing the issue of security under Rule 62(b) indicate some flexibility in assessing adequate security." *Id*.

Flow's request is reasonable. Flow is not asking the Court for a long delay. Flow is simply requesting a short extension of the automatic 30-day stay until this Court rules on all final post-trial motions. If Flow's Rule 50 motion is granted, judgment will be vacated in Flow's favor, thereby eliminating any need for a cost award to Ruiz Fajardo and disposing of the need for a bond. In similar circumstances, courts have concluded that no additional security was necessary. *See United States v. Moyer*, No. C 07-00510 SBA, 2008 WL 3478063, at *12 (N.D. Cal. Aug. 12, 2008) (granting Rule 62(b) motion without security because, among other reasons, collection process was not complex; time to dispose of post-judgment motion was short; and defendant had assets sufficiently available for liquidation such that a bond would be a waste of money); Declaration of Alexandria Walker ("Walker Decl."), Ex. 1 (granting motion to stay under Rule 62(b) pending enforcement of the judgment without bond "in light of the limited period contemplated between the Hearing and my entry of the under advisement disposition of the Motion."). This Court should do the same.

Ruiz Fajardo cites to a 2018 article referencing Flow's decision to move part of its operations to a different state to support its contention that Flow may be unable to pay the judgment. The article, which was published one year ago, does not support this contention. As noted at trial, Flow is a well-regarded company with high profile clients, such as SpaceX, NASA, and John Deere. Walker Decl., Ex. 2. Flow's clients span multiple industries. *Id*. Flow is an established company—it has been in business for over 40 years and has sold over 13,000 waterjet cutting machines. *Id*. Should it need to do so, Flow will be able to satisfy the judgment once post-trial motions are resolved. Any indication to the contrary is baseless.

DEFENDANT FLOW INTERNATIONAL'S REPLY
TO PLAINTIFF'S OPPOSITION TO FLOW'S POST-
TRIAL MOTIONS - 6
No. 2:16-cv-01902-RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

1
2    Respectfully submitted this 22nd day of March, 2019.
3                                           DLA PIPER LLP (US)
4
5                                           *s/ Andrew R. Escobar*
                                            Andrew R. Escobar, WSBA No. 42793
                                            Jeffrey DeGroot, WSBA No. 46839
6                                           Alexandria A. Walker, WSBA No. 53786
                                            701 Fifth Avenue, Suite 6900
7                                           Seattle, Washington  98104-7029
                                            Tel:    206.839.4800
8                                           Fax:    206.839.4801
                                            E-mail:  andrew.escobar@dlapiper.com
9                                           E-mail:  jeffrey.degroot@dlapiper.com
                                            E-mail:  alexandria.walker@dlapiper.com
10
                                            Attorneys for defendant
11                                          Flow International Corporation
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the parties.

Dated this 22nd day of March, 2019.

*s/ Alicia Morales*
Alicia Morales, Legal Practice Specialist

WEST\285708070.2