HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUIZ FAJARDO INGENIEROS ASOCIADOS S.A.S., <br><br> Plaintiff, <br><br> v. <br><br> FLOW INTERNATIONAL CORPORATION, <br><br> Defendants. | CASE NO. C16-1902 RAJ <br><br> ORDER |

This matter comes before the Court on Plaintiff Ruiz Fajardo Ingenieros Asociados S.A.S.'s ("Ruiz Fajardo") Motion for Attorney Fees and Costs. Dkt. # 84. Defendant Flow International Corporation ("Flow") has opposed this Motion, and Ruiz Fajardo has filed a Reply. Dkt. ## 103, 105. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Ruiz Fajardo's Motion.

## I. BACKGROUND

On December 13, 2016, Ruiz Fajardo brought this action against Flow, asserting claims under Washington law against Flow for breach of contract and warranty arising out of the sale of a waterjet cutting machine. Dkt. # 1. On October 25, 2018, Flow brought a motion for partial summary judgment against Ruiz Fajardo. Dkt. # 32. Specifically, Flow sought summary judgment on: following: (1) whether the consequential damages limitation contained in the Contract is enforceable; (2) whether the only warranty in which Plaintiff can base its breach of warranty claim is the single express limited warranty contained in the Contract, and if so, whether the terms of the warranty mandate that the warranty extends for only one year after the date of shipment; and (3) whether Plaintiff revoked its acceptance of the machine. Dkt. # 42 at 6. The Court ruled in favor of Flow on the latter two grounds, and determined there was a genuine issue of material fact genuine issue of material fact "as to whether the remedy limitation in the Contract failed its essential purpose, and whether the Contract's limitation on consequential damages is valid." *Id*. at 9.

A jury trial began on January 28, 2019 and concluded on February 6, 2019. Dkt. # 61-66. Shortly before the jury rendered its verdict, the jury asked the Court: "In lieu of lost profits may we award compensation in form of the amount of contract price of a Mach 4 $437,830?" Dkt. # 72. After conferring with counsel, the Court responded: "You may award damages you believe are appropriate and recoverable in light of the instructions provided to you." *Id*. at 2; *see also* Dkt. # 68. On February 7, 2019, the jury entered a verdict in favor of Ruiz Fajardo, awarding Ruiz Fajardo $437,830 in unspecified damages. Dkt. # 74.

## II. DISCUSSION

**A.     Ruiz Fajardo is Entitled to Attorney's Fees Under RCW 4.84.330**

Where the court exercises jurisdiction over state law claims, it generally relies on state law regarding the recovery of attorney fees. *MRO Communications, Inc. v. AT & T*

*Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999). Under Washington law, a court shall award "reasonable" attorney's fees to the prevailing party in a contract dispute. *See* RCW 4.84.330. According to RCW 4.84.330, "[i]n any action on a contract . . ., where such contract . . . specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract . . ., shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract . . . or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements." *Id*. The purpose of RCW 4.84.330 is to convert unilateral attorney fees provisions into bilateral provisions. *See Mahler v. Szucs,* 135 Wash.2d 398, 957 P.2d 632, 650–51 (1998) (explaining that public policy forbids one-way attorneys' fee provisions). RCW 4.84.330 is designed to ensure that parties will not be deterred from bringing actions on a contract or lease "for fear of triggering a one-sided fee provision." *Wachovia SBA Lending, Inc. v. Kraft,* 165 Wash.2d 481, 498, 200 P.3d 683 (2009).

For the purposes of this provision, "an action is on a contract if the action arose out of the contract and if the contract is central to the dispute." *Seattle First Nat'l Bank v. Wash. Ins. Guar. Ass'n*, 116 Wash.2d 398, 413, 804 P.2d 1263 (1991). A "prevailing party" is simply a "party in whose favor final judgment is rendered." RCW 4.84.330. "The language of the statute is mandatory with no discretion except as to the amount." *Kofmehl v. Steelman*, 80 Wash. App. 279, 286, 908 P.2d 391 (1996).

Here, there seems to be little dispute that the underlying action is "on a contract." There is also no dispute the parties' Agreement contained an attorney's fees provision. Although it was written initially to benefit Flow, under RCW 4.84.330 the fees and costs of litigation would be available to Ruiz Fajardo if it was the "prevailing party." Dkt. # 85, Ex. 2 at 26.

The parties instead dispute whether Ruiz Fajardo is entitled to any fees at all as the "prevailing party" in this lawsuit. On February 7, 2019, this Court entered judgment in favor of Ruiz Fajardo on the lone breach of warranty claim at trial. Dkt. # 76. Ruiz

Fajardo is thus a "prevailing party" on the breach of warranty claim under RCW 4.84.330. *See* RCW 4.84.330 ("As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."). Flow counters that Ruiz Fajardo is not the "prevailing party" because it did not win on all claims, as the Court ruled for Flow on Ruiz Fajardo's rescission claim at the summary judgment stage. Dkt. # 93 at 9-10. The Court does not agree. Under Washington law, if neither party wholly prevails, then the party that substantially prevails on its claims is the prevailing party. *Marine Enterprises, Inc. v. Security Pac. Trading Corp.*, 50 Wash. App. 768, 772, 750 P.2d 1290, *review denied*, 111 Wash.2d 1013 (1988). The substantially prevailing party need not prevail on their entire claim. *See Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wash. App. 762, 774, 677 P.2d 773, *review denied*, 101 Wash.2d 1021 (1984). Accordingly, despite Flow's partial summary judgment victory on certain issues, Ruiz Fajardo still "substantially prevailed" as it succeeded on its primary breach of warranty claim at trial.

The effect of this finding, while permitting Ruiz Fajardo to collect its fees and costs in this litigation, is not as straightforward as Ruiz Fajardo suggests. Washington courts recognize that the "substantially prevailing party standard . . . may not lead to a fair or just result in the situation where a party receives an affirmative judgment on only a few distinct and severable contract claims." *Mike's Painting, Inc. v. Carter Welsh, Inc.*, 95 Wash. App. 64, 68, 975 P.2d 532, 535 (1999) (citing *Marassi v. Lau*, 71 Wash. App. 912, 917, 859 P.2d 605 (1993)). In this circumstance, "the plaintiff should be awarded attorney fees for the claims it prevails upon, the defendant should be awarded attorney fees for those claims it successfully defends and the awards should be offset." *Mike's Painting*, 95 Wash. App. at 68-69. The Court agrees with Flow that Ruiz Fajardo presented its breach of contract claim (relying heavily on a revocation theory) and its breach of warranty claim as separate and distinct claims, and Ruiz Fajardo prevailed only on the latter. *See, e.g.*, Dkt. # 1 at ¶ 43 ("Flow breached its contract with Ruiz Fajardo. Flow also breached its warranty to Ruiz Fajardo."). Had Flow submitted its own request

for attorney fees in connection with Ruiz Fajardo's breach of contract claim, the Court may be inclined to offset Ruiz Fajardo's award with Flow's own. As it stands, Flow has submitted no such documentation. Ruiz Fajardo also indicates it has removed time entries associated with this, and other unsuccessful theories, from its fee request, though as indicated below, the Court is somewhat skeptical of this claim. Dkt. # 100 at 4. Accordingly, the Court will attempt to make appropriate and reasonable deductions of Ruiz Fajardo's award, where necessary and appropriate, based on Flow's partial victory at summary judgment.

### B. The Court Grants in Part and Denies in Part Ruiz Fajardo's Requested Fees

In Washington, courts use the lodestar method to determine a reasonable attorney fee award. *Mahler v. Szucs,* 135 Wash.2d 398, 957 P.2d 632, 650–51 (1998). The Court must determine a lodestar by multiplying a reasonable hourly rate or rates by the number of hours reasonably expended in the litigation. *Mahler,* 957 P.2d at 651. The party seeking fees bears the burden of proof. *Id.*

*1. Reasonable Rate*

Determining a reasonable hourly rate requires the Court to consider the attorney's usual fee, the attorney's level of skill and experience, the amount of the recovery, and the "undesirability of the case." *Bowers v. Transamerica Title Ins. Co.,* 100 Wash.2d 581, 675 P.2d 193, 203 (1983). The Court can also consider the customary hourly rates in the local area, the effect of the case on the attorney's availability for other work, whether the case is particularly complex or difficult, and a host of other factors. *Mahler,* 957 P.2d at 651 n.20. The presumptive reasonable hourly rate for an attorney is the rate the attorney charges. *Broyles v. Thurston Cty.*, 147 Wash. App. 409, 445, 195 P.3d 985, 1004 (2008). The applicable geographic area for determining a reasonable hourly rate for Plaintiffs' counsel is the entire Puget Sound region. *Id.* The Court may also rely on its own

knowledge and experience regarding fees charged in the area in which it presides. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, Flow does not contest the reasonableness of the hourly rates for Ruiz Fajardo's Washington counsel, Betts, Patterson, & Mines, P.S. ("Betts Patterson"). Dkt. # 93 at 11. According to the evidence provided in support of Ruiz Fajardo's Motion, Ruiz Fajardo is requesting 1979.25 hours of work by Betts Patterson timekeepers at hourly rates of $150 to $425 by seven different timekeepers at Betts Patterson for work leading up to and through trial. Dkt. # 85 at ¶ 18. Ruiz Fajardo also requests fees and costs associated with the work of Ruiz Fajardo's Colombian counsel, Miguel Ocampo Mejia in the amount of $100,000, and $19,902.50 in "supplemental" fees and costs incurred as a result of post-trial motions. *Id.* at ¶¶ 20, 35.

Ruiz Fajardo's counsel submits in a declaration that the Betts Patterson rates are the "same billing rates charged to [Plaintiff's attorneys'] hourly clients." Dkt. # 272 at p. 3, ¶ 6. The Court observes that, based on this Court's experience, Ruiz Fajardo's Washington counsel's rates are consistent with the rates charged by other lawyers in the Puget Sound area and approved by this Court. *See, e.g., Nat'l Prod., Inc. v. Aqua Box Prod., LLC*, No. 12-605-RSM, 2013 WL 12106900, at *2 (W.D. Wash. Mar. 15, 2013) ($465-485/partner, $205-300/associates, $120/paralegal).

Based on the Court's experience and Flow's lack of opposition, the Court finds that the hourly rates claimed by Ruiz Fajardo's counsel at Betts Patterson are reasonable. The Court will thus permit Ruiz Fajardo to recover attorney's fees associated with counsel from this firm. The Court is in a different position as to Mr. Ocampo, Ruiz Fajardo's Colombian counsel. Ruiz Fajardo requests $100,000 in fees associated with Mr. Ocampo's work in this case, a figure not based on billing records but rather on a "flat fee" charged to Ruiz Fajardo. Dkt. # 84 at 5-6; Dkt. # 86 at ¶ 5, Ex. A. Ruiz Fajardo did not submit Mr. Ocampo's billing records in connection with its Motion. Dkt. # 86. While Ruiz Fajardo has submitted a Declaration by a Colombia attorney, Felipe Gomez

Ospina, arguing that the flat fee arrangement was "in compliance with common practices standards among Columbian lawyers," Mr. Gomez Ospina did not indicate that he specifically reviewed Mr. Ocampo's time entries or determined that his corresponding hourly rates were reasonable. Dkt. # 87. The Court is not familiar with billing rates or practices in Colombia and cannot rely on its own familiarity with respect to rates or fee arrangements in foreign countries. Mr. Gomez Ospina's brief Declaration is insufficient to assuage the Court's concerns here. Moreover, as Flow observes, at least a portion of Mr. Ocampo's work appears to have been arguably clerical in nature, such as "organizing and collecting documents" and serving as Mr. Ruiz's translator during trial, or duplicative of other attorneys' work. Dkt. # 93 at 14-15. Because the Court does not have Mr. Ocampo's billing records, it cannot differentiate between these potentially uncollectable entries and properly collectable entries. While the Court has no reason to doubt the effectiveness, necessity, or competency of Mr. Ocampo's services, it does not have a proper basis at this point to order the award of Mr. Ocampo's attorney fees. The Court will accordingly not permit Ruiz Fajardo to collect the requested $100,000 for Mr. Ocampo's services in this case.

   2. *Reasonable Expended Hours*

Proof of an appropriate lodestar begins with reasonable documentation of the work the attorney performed. That documentation "need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e. senior partner, associate, etc.)." *Bowers*, 675 P.2d at 203. In determining if the attorney "reasonably expended" the hours she claims, the court should "discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Id.*

Flow has objected to certain time entries, namely Ruiz Fajardo's requests for (1) time spent on "unsuccessful claims"; (2) unproductive time at trial; and (3) clerical work. Dkt. # 93 at 6-12. Flow further objects to a fee award of an amount 1.77 times higher

than the jury's verdict. *Id.* The Court believes that some of Flow's objections have merit, and certain reductions in requested fees are warranted. The Court discusses each objection and reduction below.

    a. <u>Unsuccessful Claims</u>

As alluded to above, Flow argues that Ruiz Fajardo's award should be reduced by the amount of time Ruiz Fajardo spent arguing unsuccessful claims Flow prevailed on. Dkt. # 93 at 11-13. This includes (a) claims and theories Flow prevailed on at summary judgment; and (b) Ruiz Fajardo's request for lost profit damages. *Id.*

The Court finds that Flow's objection here has partial merit. First, Flow is correct that it moved for summary judgment on multiple different grounds, and prevailed on approximately 75% of these grounds. *See* Dkt. # 42. The Court will not permit Ruiz Fajardo to collect attorney fees related to these unsuccessful theories, and will reduce Ruiz Fajardo's award here by 75%, or $22,072. Dkt. # 94 at ¶ 12. The Court does not, however, agree with Flow's approach here of reducing the entirety of Ruiz Fajardo's award for pre-summary judgment entries by 50%. Dkt. # 93 at 12. Although Flow speculates that this proportion accounts for time Ruiz Fajardo spent on unsuccessful theories, Flow does not provide citations to specific entries or a viable factual basis to support this specific objection. However, as discussed below, the Court will apply additional reductions based on its own inherent authority to do so, which brings about a similar result.

Second, the Court agrees that under the unique circumstances of this case, it would not be appropriate to permit Ruiz Fajardo to collect fees and costs associated with its request for lost profit damages. As noted above, the jury indicated at trial that they were not awarding lost profit damages to Ruiz Fajardo via a question directed to the Court, and the final verdict reflects this intention. The record thus indicates that Ruiz Fajardo did not prevail on this theory, and the Court will permit a reduction of $59,500 in fees and

costs associated with the time Ruiz Fajardo's expert spent working on the lost profits claim. Dkt. # 94, ¶ 10.

Accordingly, the Court will permit a reduction of $81,572 from Ruiz Fajardo's fee and costs award on the basis of Flow's objections here.

   b. Unproductive Time at Trial

Flow objects to Ruiz Fajardo's efforts to collect fees and costs for "unproductive" time its attorneys spent at trial. Dkt. # 93 at 13-14. Flow notes that Ruiz Fajardo's presentation of evidence carried on longer than anticipated and was necessary, as exemplified by almost two full trial days devoted entirely to Mr. Ruiz's testimony. *Id.* Flow also argues that Ruiz Fajardo's counsel failed to adequately edit its video deposition presentation, resulting in a large amount of "dead air" and useless information being presented to the jury. *Id.* The Court is painfully familiar with these instances of inefficiency, and agrees that Ruiz Fajardo expended a significant amount of unproductive time at trial. The Court will not permit Ruiz Fajardo to recover the $14,510 associated with Ruiz Fajardo's video editing efforts, or the $5,077 of duplicative time its counsel all billed for such efforts.

Accordingly, the Court will permit a reduction of $19,587 on this basis of Flow's objections here.

   c. Clerical Work

Flow object to Ruiz Fajardo attempting to collect fees associated with "clerical work" completed by its paralegal, Shane Kangas, and Mr. Ocampo. Dkt. # 93 at 14-15. As mentioned above, the Court will not permit recovery of Mr. Ocampo's fees and costs, totaling $100,000, due to a lack of proper basis for awarding such fees and costs. As for Mr. Kangas, a court can award fees where a paralegal performs legal (as opposed to clerical) work, does so under the supervision of an attorney, and is qualified "to perform substantive legal work." *Absher Constr. Co. v. Kent Sch. Dist.*, 79 Wash. App. 841, 917 P.2d 1086, 1088 (1995). However, paralegals and other assistants are not entitled to

compensation for nonlegal work. *Id*. at 1089 (denying compensation for time spent preparing pleadings, preparing copies, and similar tasks; granting compensation for "time spent preparing the briefs and related work"); *see also N. Coast Elec. Co. v. Selig*, 136 Wash. App. 636, 645, 151 P.3d 211, 216 (2007) (compensation for clerical work like preparing pleadings for duplication, preparing and delivering copies, requesting copies, and obtaining and delivering a docket sheet is not within the realm of reasonable attorney fees).

Although Ruiz Fajardo contends that the time entries at issue were for legal rather than clerical work, a review of the time records confirms that much of the challenged work was clerical in nature. *See, e.g.*, Dkt. # 85-6 at 132 ("Research free video editing software and install"); 144 ("Prepare trial notebooks exhibit sets for counsel"); 145 ("Prepare trial supplies for witness conference room"). The Court concludes that Flow is entitled to a further reduction of $14,128 in the requested fees due to the clerical nature of this work.

    d.  <u>Disproportional Fee Award</u>

To this point, the Court has applied the following reductions to Ruiz Fajardo's requested fee and cost award: $100,000 associated with Mr. Ocampo, $22,072 in time spent on unsuccessful claims, $59,500 in time spent on lost profit damages, $19,587 in unproductive trial time, and $14,128 in clerical work. This results in total continuing reduction of $215,287. Flow additionally objects that Ruiz Fajardo's fee request is unreasonable because it is excessive, as reflected by the fact that the requested fee award of $774,402.43 is more than 1.77 times the jury verdict of $437,830. Dkt. # 93 at 15.

Generally, attorneys may "recover more than the benefit to their client would make reasonable, because (such actions) also confer benefits on others throughout society." *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 809 (9th Cir. 1995). "But the benefit is not infinite. What the lawyers do for their actual client is an important measure of 'extent of success.'" *Id.* Thus, the degree of success is relevant to a fee

award, but strict proportionality between relief obtained and attorney fees is not required. *Riverside v. Riviera*, 477 U.S. 561, 574 (1986).

However, a federal court may deny contractually-authorized attorney's fees "if an award of fees would be 'inequitable and unreasonable.'" *Anderson v. Melwani*, 179 F.3d 763, 766 (9th Cir. 1999) (quoting *DeBlasio Contr. Inc. v. Mountain States Constr. Co.*, 588 F.2d 259, 263 (9th Cir. 1978)). "A court 'abuses its discretion if it awards contractually-authorized attorney's fees under circumstances that make the award inequitable or unreasonable or fails to award such fees in a situation where inequity will not result.'" *Anderson*, 179 F.3d at 266 (internal quotations omitted); *see also Theros v. First Am. Title Ins. Co.*, C10-2021-JCC, 2011 WL 13137105, at *2 (W.D. Wash. May 5, 2011) (denying attorney's fees allowable under RCW 4.84.330 because "it would be inequitable and unreasonable to award Defendant [] attorney's fees in this case").

If the Court applies the current $215,287 deduction to Ruiz Fajardo's claimed $774,402.43 fee award, the result of $557,115.40 still well exceeds the jury verdict. The Court agrees with Flow that this result would significantly eclipse Ruiz Fajardo's degree of success in this matter, and permitting such a large award would not be equitable or reasonable. The Court also recognizes good-faith efforts that Flow made during litigation toward resolving the dispute, such as sending its engineers to Ruiz Fajardo's Columbia facilities to fix the machine and restore it to working order.

The Court will thus permit additional reductions on the basis of Flow's objections here, and because of the Court's own determinations of the reasonableness of the requested fees and costs. First, the Court will reduce Ruiz Fajardo's requested fees and costs associated with the post-trial motions in this case (totaling $19,902.50) by 50%, which the Court believes reflect Ruiz Fajardo's degree of success on these motions. This brings the new total to $547,164.20. Next, the Court will apply an additional 50% reduction based on Flow's successful defense of a number of Ruiz Fajardo's key claim theories, the resulting verdict being dramatically lower than Ruiz Fajardo's anticipated

award, and Flow's good-faith efforts to resolve this matter short of litigation.  This results in a final fee award of $273,582.10.

### III.  CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN APRT** Ruiz Fajardo's Motion for Attorney Fees and Costs.  Dkt. # 84.  The Court awards Ruiz Fajardo $273,582.10 in fees and costs.

Dated this 2nd day of July, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge